ANNE RUSSELL, a Minor, by Patti Russell *et al.*, Her Parents and Next Friends, v. GOOD SHEPHERD HOSPITAL *et al.*, Defendants-Appellees.

Second District   No. 2—91—0351

Opinion filed December 12, 1991.

Albert Brooks Friedman and Jane A. Ready, both of Albert Brooks Friedman, Ltd., of Chicago, for appellant.

Gregory E. Schiller, of Cassiday, Schade & Gloor, and James A. Christman, of Wildman, Harrold, Allen & Dixon, both of Chicago, for appellee Good Shepherd Hospital.

Fredric J. Grossman, James T. Ferrini, Imelda R. Terrazino, Edward M. Kay, and Susan Condon, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellee Kathleen Hodgman.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Anne Russell, by her parents and next friends Patti and George Russell, appeals the trial court's order dismissing two of the six counts of her suit for medical malpractice against defendants,

Good Shepherd Hospital, Kathleen Hodgman, M.D., and Robert Pines, M.D. Plaintiff argues that (1) count V properly pleaded a claim for willful and wanton misconduct by defendant Hodgman in connection with the prenatal care and delivery of plaintiff, an infant born with severe brain damage, and (2) count VI properly pleaded a cause of action for negligence against all defendants under a theory of *res ipsa loquitur*. Defendant Kathleen Hodgman, in addition to arguing that the trial court properly dismissed the two counts, has moved in this court to dismiss the appeal of count VI. We dismiss the appeal insofar as it relates to count VI and affirm the dismissal of count V.

Plaintiff was born on August 26, 1981, at Good Shepherd Hospital (the hospital). Count I of plaintiff's second amended complaint, filed October 22, 1990, alleged that defendant Dr. Robert Pines, a licensed obstetrician and gynecologist, was negligent in administering prenatal and delivery care to Patti Russell. Count I alleged specifically that Pines was called in as a consultant by Hodgman to evaluate Patti Russell's labor and that he was negligent in that he: failed to take over delivery of plaintiff from Hodgman once he saw that plaintiff and Patti Russell were in distress; failed to monitor the fetal heartbeat or respond to the existing fetal emergency; failed to supervise Hodgman or the attending nurses and allowed Hodgman and the attending nurses to undertake a procedure for which they were inadequately trained; failed to recognize plaintiff's distress and promptly deliver her by cesarean section, resulting in deprivation of oxygen to plaintiff; failed to inform plaintiff's parents of the seriousness of her condition at discharge from the hospital; failed to monitor properly the administration of pitocin during labor; performed the surgery improperly, allowing the aspiration and inhalation of meconium by plaintiff; and failed to resuscitate plaintiff following her delivery. Count I alleged that as a direct and proximate result of Dr. Pines' negligence, plaintiff was born with severe and permanent brain damage, causing her to suffer permanent mental and developmental retardation and necessitating medical and custodial care for the rest of her life.

Count II alleged that defendant Kathleen Hodgman, M.D., the physician retained by Patti Russell to deliver plaintiff, was negligent in respects similar to Dr. Pines and also in that she failed to notify plaintiff's parents of the need for a board-certified obstetrician to attend to Patti Russell's labor, failed to call in Dr. Pines for a full consultation rather than a limited one, and took over care of plaintiff when she knew or should have known that she was incapable of handling the problems with plaintiff's delivery.

Count III alleged that the hospital was negligent in that its residents, nurses and technicians were not properly trained to respond to plaintiff's fetal distress, failed to perform a timely cesarean section on Patti Russell, and failed to obtain the attendance of a qualified obstetrician after plaintiff's fetal distress put them on notice that such attendance was required.

Count IV alleged that Dr. Pines was guilty of willfully and wantonly injuring plaintiff in that he willfully: left a standing order that no treatment was to be administered vaginally to Patti Russell, with the result that no fetal monitors were placed onto the body of the fetus; failed to monitor Patti Russell's labor or use standard monitoring and safety devices; and turned the care of plaintiff and Patti Russell back to Dr. Hodgman, an unqualified family practitioner. Count IV prayed for punitive as well as compensatory damages.

Count V alleged that Dr. Hodgman willfully and wantonly injured plaintiff in that, for reasons of economic gain or personal expediency, she willfully: left a standing order that no treatment was to be administered vaginally to Patti Russell, with the result that important fetal monitors were not placed on the body of the fetus; failed to monitor Patti Russell's labor or use standard monitoring and safety devices; asked Dr. Pines only for a partial consultation rather than turning the patient over to his care; and failed to take steps necessary to determine plaintiff's cephalopelvic disproportion and thus prevent plaintiff from being injured in the birth canal. Count V prayed for both compensatory and punitive damages.

Count VI alleged negligence by all the defendants. Plaintiff alleged specifically that at all relevant times defendants exercised exclusive control over all devices and equipment necessary to plaintiff's delivery; that the deprivation of oxygen to plaintiff's brain during delivery would not have happened without defendants' negligence; and that this negligence directly and proximately caused plaintiff's injuries.

In conformance with section 2—622 of the Code of Civil Procedure (section 2—622) (Ill. Rev. Stat. 1989, ch. 110, par. 2—622), plaintiff attached an affidavit from her attorney stating that plaintiff's attorney had consulted with Dr. William Matviuw, an obstetrician and gynecologist who had reviewed the relevant facts and who had determined that plaintiff had a meritorious cause of action, and that on this basis plaintiff's attorney concluded that there was reasonable cause for filing the action. Plaintiff attached Dr. Matviuw's written report. Matviuw stated that from reviewing the medical records he concluded that defendants' inappropriate use of pitocin, failure to re-

spond appropriately to evidence of fetal distress and failure to monitor the fetus appropriately prior to delivery amounted to negligence causally related to plaintiff's neurological injuries.

Dr. Hodgman moved to dismiss counts V and VI of the complaint. She argued that count V failed to state a cause of action for willful and wanton misconduct because (1) the allegations that Dr. Hodgman acted willfully and wantonly were mere conclusions; (2) the medical report of Dr. Matviuw did not refer in any way to willful and wanton misconduct and therefore failed to satisfy section 2—622; and (3) the punitive damages plaintiff requested in this count were explicitly barred by section 2—1115 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1115).

Dr. Hodgman argued that count VI, grounded in *res ipsa loquitur*, was legally insufficient because (1) plaintiff failed to allege that defendants had exclusive control of the fetus during Patti Russell's pregnancy, and that during pregnancy it is the mother who in fact has exclusive control of the fetus; (2) count VI failed to allege that plaintiff's injury would not ordinarily occur in the absence of negligence, and that in fact mental retardation and brain damage may be caused by a multitude of factors; and (3) Dr. Matviuw's medical report failed to set forth either that defendants had exclusive control or management or that plaintiff's injury would not have occurred in the absence of negligence and therefore did not comply with section 2—622.

The trial court dismissed counts V and VI and expressly found that there was no just reason to delay enforcement or appeal of the dismissal order (see 134 Ill. 2d R. 304(a)). Plaintiff then filed this appeal.

Dr. Hodgman has moved to dismiss the appeal insofar as it seeks reversal of the dismissal of count VI. Defendant Hodgman argues that because *res ipsa loquitur* is a principle of evidence relating to negligence rather than a theory of recovery separate from negligence, the dismissal of the *res ipsa loquitur* count was not final and appealable where negligence counts against defendants were left pending. We ordered the motion taken with the case. We now grant the motion and dismiss the appeal from the dismissal of count VI.

We agree with Dr. Hodgman that this case is controlled by *Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622. There plaintiff's six-count complaint included two counts alleging negligence on the part of the defendants doctor and hospital, two more counts alleging that the doctor and hospital were liable under a theory of *res ipsa loquitur*, and two counts against the defendant manufacturer of medical equipment. The trial court dismissed counts II and IV. The appellate

court dismissed the appeal from this ruling. The court noted initially that inclusion of the language required by Supreme Court Rule 304(a) would not confer appellate jurisdiction if the order appealed from was not in fact final. The court then held that the dismissal of the *res ipsa loquitur* counts was not final but interlocutory. Crucial to the court's reasoning was that the four counts against the doctor and hospital were all predicated on a theory of negligence; because *res ipsa loquitur* is "a rule of evidence and not a separate theory of recovery" (72 Ill. App. 3d at 625), the dismissal of the counts based on that theory of evidence did not determine the merits of a separate cause of action (*i.e.*, one for negligence) as that cause of action (negligence) was still pending against both the doctor and the hospital. If the plaintiff recovered on the negligence theory, the dismissal of the *res ipsa loquitur* counts would be moot; if she did not recover for negligence, the dismissal of the *res ipsa loquitur* counts would be reviewable on appeal.

The *Prado* court noted that in *Walker v. Rumer* (1977), 51 Ill. App. 3d 1005, *aff'd* (1978), 72 Ill. 2d 495, the trial court dismissed a count based on *res ipsa loquitur* and let stand a count based on specific acts of negligence. The appellate court in *Walker* granted a permissive appeal of the order pursuant to Supreme Court Rule 308. The *Prado* court characterized the trial court's order in *Walker* as interlocutory.

Plaintiff, however, asserts that *Prado* has been overruled implicitly by *Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, and explicitly by *Wuench v. Ford Motor Co.* (1982), 104 Ill. App. 3d 317. We do not agree. In *Rinck*, the plaintiff's complaint alleged negligence (count I) and *res ipsa loquitur* (count II). The trial court dismissed count II and struck count I with leave to amend. The plaintiff did not amend but instead appealed. The appellate court did not discuss *Prado* and held that a notice of appeal stating that the plaintiff appealed from the dismissal of count II also brought up for review the trial court's dismissal of count I. In *Rinck* neither count of the complaint was pending at the time of the appeal. Thus the appeal from the dismissal of the *res ipsa loquitur* count could not have been interlocutory as no cause of action for negligence was pending at the time of the appeal. As the plaintiff was appealing from the complete dismissal of any cause of action for negligence (and, indeed, from the complete dismissal of her action), the issue of whether the dismissal of a count based on *res ipsa loquitur* is appealable under Supreme Court Rule 304(a) where a count for negligence

remains simply did not arise in *Rinck*. *Rinck* therefore is in no way inconsistent with *Prado*.

*Wuench* presents a more confusing picture. Two plaintiffs brought an eight-count complaint against two defendants. The complaint included counts sounding in negligence, breach of warranty, strict liability in tort, *res ipsa loquitur* and "damage to property." The trial court dismissed the two counts sounding in *res ipsa loquitur* and the one count for "property damage." In holding that it had jurisdiction to consider the dismissal of the *res ipsa loquitur* counts, the *Wuench* court distinguished *Prado* in two respects. First, the court reasoned that because the complaint and the appeal before it involved claims other than negligence or *res ipsa loquitur*, the appeal as a whole could not be dismissed.

Second, the court held that it could entertain the appeal of the dismissal of the *res ipsa loquitur* counts because "since *Prado* this court has dealt with the merits of a count alleging *res ipsa loquitur* while the litigation was still in the pleading stage." (*Wuench*, 104 Ill. App. 3d at 318.) As its sole authority for this conclusion, the court cited *Rinck*. The court did not elaborate on its reasoning; in particular, it did not explain how *Rinck*, which was an appeal from the dismissal of an entire complaint, affected the rule of *Prado* that because *res ipsa loquitur* is a rule of evidence rather than an independent theory of recovery the dismissal of a *res ipsa loquitur* count is not a final order where it leaves a claim for negligence pending. It is clear to us that the dismissal of the *res ipsa loquitur* count in *Rinck* was appealable not because it was in itself final within the meaning of Supreme Court Rule 304(a) but because, the plaintiff's entire complaint having been dismissed, Rule 304(a) was irrelevant; thus, the dismissal of the *res ipsa loquitur* count was reviewable regardless of whether it was, considered in isolation, interlocutory or final.

■ We have recently reiterated the long-standing rule, controlling in *Prado*, that where a party states one claim in several counts, the dismissal of fewer than all such counts is not a final judgment as to fewer than all of the party's *claims* as required by Supreme Court Rule 304(a). (*Arachnid, Inc. v. Beall* (1991), 210 Ill. App. 3d 1096, 1103; see also *Hull v. City of Chicago* (1987), 165 Ill. App. 3d 732.) To the extent that *Wuench* is inconsistent with this rule, we decline to follow *Wuench*. Also, plaintiff is not entitled to appeal the interlocutory dismissal of the *res ipsa loquitur* count merely because the dismissal of her count for willful and wanton injury is properly before this court. *Palatine National Bank v. Charles W. Greengard Associ-*

*ates, Inc.* (1983), 119 Ill. App. 3d 376, 381-82; *Messenger v. Rutherford* (1967), 80 Ill. App. 2d 25, 31.

We therefore dismiss the appeal from the trial court's dismissal of count VI of the complaint.

We now consider the dismissal of count V of the complaint. Plaintiff argues that count V alleged sufficient specific facts to state a claim against Dr. Hodgman for willful and wanton injury. She also maintains that the count for willful and wanton injury may stand even though the affidavit and physician's report required by section 2—622 did not specifically state that there was a reasonable and meritorious cause for filing a claim based on an allegation of willful and wanton conduct.

▮ Plaintiff, however, has consistently failed to respond to the third argument advanced in support of dismissing count V, namely, that punitive damages are not recoverable in a medical malpractice action. This argument is dispositive. Section 2—1115 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1115) unambiguously states that "[i]n all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." Given that plaintiff may not recover punitive damages, we believe that count V was properly dismissed and that we need not decide whether it was otherwise legally sufficient.

Although the allegations of count V differ slightly from those contained in count II, which alleges that Dr. Hodgman was negligent, the differences appear to relate solely to the mental state required to support the allegation that Dr. Hodgman's conduct was ·"willful" or "wanton" rather than merely negligent. Both a claim of negligence and a claim of willful and wanton misconduct require a plaintiff to establish a duty, the breach of that duty and an injury proximately caused to the plaintiff thereby; however, the willful and wanton misconduct claim requires an additional showing that the defendant acted with intentional or conscious disregard for the plaintiff's safety, rather than merely carelessly. (*Riley v. Physicians Weight Loss Centers, Inc.* (1989), 192 Ill. App. 3d 23, 32.) As plaintiff here may not recover punitive damages, whether count V is otherwise sufficient would appear to be an abstract issue; plaintiff would not benefit from the reinstatement of count V, which would simply hold her to a higher burden of proof against Dr. Hodgman than count II (sounding in negligence) in order to recover the same damages. A reviewing court need not pass on abstract questions the resolution of which will not

affect the result of the litigation. (*Barth v. Reagan* (1990), 139 Ill. 2d 399, 419.) Also, at least one reviewing court has upheld the dismissal of an entire count for willful and wanton misconduct on the basis that punitive damages were barred by statute. See *George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692.

We conclude that the statutory bar against punitive damages adequately supports the dismissal of count V. We therefore need not address the parties' further arguments on this issue.

The appeal from the trial court's dismissal of count VI is dismissed, and the judgment of the circuit court of Lake County is otherwise affirmed.

Dismissed in part; affirmed in part.

INGLIS and McLAREN, JJ., concur.