Richard D. LINDGREN, M.D., Laura
L. Gardner and Mark R.
Lindgren, Plaintiffs,

v.

Janet L. MOORE and James F.
Cassens, Ph.D., Defendants.

No. 94 C 5992.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 29, 1995.

Maura Susanne Weidner, Patricia L. Argentati, Norton & Mancini, Wheaton, IL, for Richard D. Lindgren, M.D., Laura L. Gardner.

Donald J. Parker, Law Office of Donald J. Parker, Ltd., Downers Grove, IL, John E. Cassidy, Jr., David B. Mueller, John Edward Cassidy, Jr., Cassidy & Mueller, Peoria, IL, for Janet L. Moore.

James O. Nolan, John Michael Hynes, Benjamin Edward Patterson, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for James F. Cassens, Ph.D.

## MEMORANDUM OPINION AND ORDER

COAR, District Judge.

In February 1994 plaintiffs Richard Lindgren ("father"), Mark Lindgren ("brother"), and Laura Lindgren ("sister") filed suit against Janet Moore ("therapist") and her supervisor, Dr. James Cassens ("supervisor") alleging various Illinois torts that arose from the psychological treatment of Amy Lindgren ("patient/daughter"). The Complaint lists twenty-seven counts, but in essence there are only five distinct causes of action. All three plaintiffs bring the following counts against both defendants: Malpractice (Counts I, VI, VIII, XIII, XIX, XXIV); Negligence (Counts II, VII, IX, XIV, XX, XXV); Intentional Infliction of Emotional Distress (Counts III, X, XV, XVII, XXI, XXVI); and Loss of Society & Companionship (Counts IV, XI, XVI, XVIII, XXII, XXVII). All of these counts allege Illinois common law claims of recovery. The plaintiffs also bring a claim of Public Nuisance against therapist Janet Moore for practicing clinical psychology without a license (Counts V, XII, XXlll).

In February, 1995, both defendants moved to dismiss all counts of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Alternatively, they move to dismiss the entire complaint for failure to acquire a proper medical report as required by Illinois Law as a prerequisite to bringing suit against the defendants. They also move to strike any claim for punitive damages. This Court now addresses these arguments for dismissal.

Plaintiffs reside in Wisconsin and Iowa; Defendants reside in Illinois. Thus, there is a diversity of citizenship and this court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case embodies a relatively recent development in tort jurisprudence, disturbing for both its legal and sociological ramifications and its intrusive effects on relationships in general. The father, sister, and brother of Amy Lindgren are suing her therapist and the therapist's supervisor for inducing what has been labelled as "False Memory Syndrome." The typical scenario mirrors the facts of this case: a person solicits treatment from a therapist because of one or more physical/mental problems. The therapist "suggests" that "repressed" memories of sexual abuse lie at the root of the illness and proceeds to treat the patient by attempting to "recover" those memories. "Recovering" those memories is intended to create a wave of catharsis that carries the patient to mental health by freeing her from the demons of her past. Frequently this catharsis leaves destroyed all family relationships in its wake. Articles and books indicate that this methodology has become a very popular treatment in mental health circles, but critics deride the practice as a mere placebo: the patient thinks they have been cured by reaching the source of the problem, but if the memories are mere fantasy, the treatment causes more harm than healing, and not only to the patient.[1] There are even support groups for family members who have become "victims" of another member's false memories.[2] This

---

**1.** For a survey of case histories and a deeper discussion of these issues, *see*, Sandra Lamb, "Tragic Delusions: How 'Recovered' Memories Tear Families Apart," FAMILY CIRCLE, July 18, 1995; Nancy Seideman, "Victims of Memory", THE ATLANTA CONSTITUTION, June 11, 1995; Television has also addressed the issue of "Re-

covered" Memories, *see, e.g.,* MELROSE PLACE, season finale (FOX television broadcast, May, 1994).

**2.** *See,* "Authors Battle Use of Recovered Memories" by Terry Horne, THE INDIANAPOLIS NEWS, July 31, 1995.

is the backdrop on which to view the case at bar.

Plaintiffs allege that daughter Amy Lindgren, now 28 years old, first sought treatment from the defendant therapist in October 1990 for depression and bulimia. (Amended Complaint, at ¶ 10). Therapist Janet Moore used various clinical psychological methods to treat the daughter (such as hypnosis, biofeedback, and psychoanalysis) even though the therapist was not licensed in Illinois as a clinical psychologist. (*Id.*, at ¶¶ 11, 12). The therapist did nothing to affirmatively indicate the she was not, in fact, a clinical psychologist. The therapist prescribed a program for the daughter which included among other things, the reading of "The Courage to Heal" by Ellen Bass and Laura Davis.[3] As a result of the treatments, the daughter began having "flashbacks" of being sexually abused by her father, one of the plaintiffs. (*Id.*, at ¶ 14). Plaintiffs deny that any such events ever occurred. (*Id.* at ¶ 16).

Plaintiffs maintain that not only was such a course of treatment not proper for the disorders from which the daughter suffered, but that the therapist took advantage of the patient's mental state in using the "Recovered Memory" therapy. In addition, they challenge the use of such methods in general as being unreliable and improper under the circumstances. (*Id.* at ¶ 17). These allegations form the basis of the negligence and malpractice claims.

Alternatively, Plaintiffs allege that the defendants "falsely convinced Amy that she was abused by [her father] in the course of 'therapy.'" (*Id.* at ¶ 20(b)). The therapist knew, or had reason to know that such a course of treatment would ultimately lead to destruction of the family unit and permanent estrangement of the daughter from the rest of her relations. (*Id.*). Before the treatment, all the plaintiffs had maintained close, enjoyable relationships with the patient. (*Id.* at p. 9). Plaintiffs maintain that the false accusations brought about by the therapist's

treatments have caused permanent and severe damage to their physical, mental, and emotional health. (*Id.*, at ¶ 22). They also allege that both the therapist and her supervisor intentionally caused the plaintiffs to suffer humiliation, mental anguish, and emotional distress. (*Id.* at ¶ 23). Plaintiffs do not indicate the daughter's current state of physical or mental health; nor do they allege that the daughter has sustained any injuries or suffers harm at this point in time. Amy is not a plaintiff in this action.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be granted if the complaint does not state a cause of action upon which relief may be granted. *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). When evaluating a motion to dismiss, the Court must assume that all of the factual allegations in the pleadings are true, and must construe the pleadings and all reasonable inferences which derive therefrom in favor of the non-moving party. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991). Unless it appears beyond doubt that the plaintiff can prove no facts which would entitle them to relief, the Court must deny the motion. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Mid–America Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 310 (1993). The facts as alleged are viewed in the light most favorable to the plaintiffs for the purpose of determining the defendants' motion to dismiss. *Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 176, 126 L.Ed.2d 135 (1993). However, the court need not strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint. *Coates v. Illinois St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). Similarly, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Nelson v. Monroe Regional*

---

**3.** In an effort to sound the alarm as to the pitfalls of this form of treatment, two authors have responded to this book in particular and False Memory Syndrome ("FMS") in general: Eleanor

Goldstein with "Confabulations" and Mark Pendergrast with "Victims of Memories". "Courage" is currently a best-seller.

*Medical Ctr.*, 925 F.2d 1555, 1559 (7th Cir.), *cert. denied,* 502 U.S. 903, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991).

## III. ANALYSIS

### A. Malpractice & Professional Negligence

Plaintiffs allege that the actions of the defendants constitute malpractice and/or negligent behavior. Defendants argue that they had no duty to the plaintiffs, as they were third parties to the defendants' relationship with their patient Amy.

Although several cases have been recently filed by family members of patients who have allegedly had false memories induced, the dispositions thus far have not been useful in the determination of this case. Most of those cases were decided on statute of limitations or statute of repose grounds; the question has largely been whether the "repression" of the memories tolled the statute of limitations on the alleged abuses.[4] However, the statute of limitations is not an issue here; this court must delve further into the substantive area of therapy through "retrieving" "repressed" memories and False Memory Syndrome to determine whether the plaintiff-family members would have standing in an Illinois state court to bring this suit against the defendants.

■ A district court sitting in diversity must apply the law of the state in which it sits to the facts of the case at hand. *Erie Railroad Co. v. Tompkins R.R.*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the Illinois Supreme Court has not yet addressed the issue of standing of parents or siblings to bring an action for malpractice or negligence in treatment of a patient not a party to the action. In this circumstance, the district court must attempt to predict how the Illinois Supreme Court would decide the issue. *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986); *Alber v. Illinois Dep't of Mental Health,* 786 F.Supp. 1340, 1364 (N.D.Ill.1992) (Shadur, J.).

■ In general, Illinois law provides that a doctor owes no duty of care to a third party absent the existence of a "special relationship" between the party and the patient. *Kirk v. Michael Reese Hospital,* 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). In *Kirk,* which established the exception to the general "no duty to third parties" rule, the Illinois Supreme Court concluded that neither the doctor nor the hospital had a duty to protect a non-patient passenger who was injured by a patient in a car accident because the patient, who had consumed an alcoholic drink in combination with a prescription, had impaired driving ability. *Kirk,* 111 Ill.Dec. at 947, 513 N.E.2d at 390. The *Kirk* court expressed its concern about extending a doctor's duty of care beyond the patient to the general public because the duty would extend "to an indeterminate class of potential plaintiffs." *Kirk,* 111 Ill.Dec. at 956, 513 N.E.2d at 399.

The Illinois Supreme Court has thus far recognized only one kind of "special relationship" which gives rise to third party standing for allegations of malpractice; the relationship between a fetus and his or her mother. *Renslow v. Mennonite Hosp.,* 67 Ill.2d 348,

---

4. *See, e.g., Nuccio v. Nuccio,* 62 F.3d 14 (1st Cir.1995) (Certifying to Supreme Judicial Court of Maine question of whether Maine statute of limitations was tolled on plaintiff's claims of emotional distress for sexual abuse because her memories were repressed); *Boggs v. Adams,* 45 F.3d 1056 (7th Cir.1995) (Illinois courts would apply reasonable period of time exception to statute of repose in Childhood Sexual Abuse Act where victim did not remember the repressed memories until she was forty-four years old); *Reed v. Barnes,* 986 F.2d 1428 (10th Cir.1992) (Because victim was not a child and the alleged abuse was ascertainable at the time is was occurring, the statute of limitations was not tolled by the victim's repression of the memory); *Hoult v.*

*Hoult,* 792 F.Supp. 143, 145 (D.Mass.1992) (Applying discovery rule to incest cases when victim has no memory of sexual abuse until after the statute of limitations has run); *Hewczuk v. Sambor,* 803 F.Supp. 1063, 1064–65 (E.D.Penn.1992) (Applying discovery rule to case of childhood sexual abuse where victim repressed memories until outside bounds of statute of limitations); *Burpee v. Burpee,* 152 Misc.2d 466, 578 N.Y.S.2d 359 (Sup.Ct. Nassau County 1991) (Rejecting repression of memory of alleged abuse as a basis for tolling the statute of limitations by a victim against her father for alleged sexual abuse); *Schmidt v. Bishop,* 779 F.Supp. 321, 330–31 (S.D.N.Y.1991) (Applying New York law to reach similar result).

10 Ill.Dec. 484, 367 N.E.2d 1250 (1977). In *Renslow,* a child sued a physician for negligent acts inflicted upon her mother before the plaintiff child was conceived. The injuries directly resulted from the doctor's negligent care. *Renslow,* 10 Ill.Dec. at 489, 367 N.E.2d at 1255. The court recognized that the general rule that negligence could not be founded upon the breach of a duty owed to some person other than the plaintiff, and reaffirmed the utility of a concept of duty as a means by which to "direct and control the course of the common law" and thus regulate the expanse of potential award recipients. *Renslow,* 10 Ill.Dec. at 488, 367 N.E.2d at 1254. However, the court nonetheless recognized a right to be born free from prenatal injuries which were reasonably foreseeably caused by a breach of duty to the child's mother. *Renslow,* 10 Ill.Dec. at 489, 367 N.E.2d at 1255. The "special relationship" in this case recognizes the logical nexus between a mother and fetus in a physical sense. While *Renslow* expands the doctor's realm of care, it did so narrowly. Most of the Illinois cases considering the question of the right of a third party to sue for injuries "caused" by malpractice committed upon another involve injuries to a pregnant woman and of whether the fetus had attained sufficient "personhood" to acquire standing at the time of injury. *Renslow* was unique in that the injury to the mother occurred prior to the conception of the plaintiff child. Whether the principle announced in *Renslow* is analogous to the issues presented here is a questionable proposition.

Defendants argue that the exception recognized in *Renslow* does not apply to the facts of this case. Plaintiffs contend that being related to the patient as father, brother, and sister satisfies the "special relationship" standard. This court concludes that while plaintiffs clearly have closer physical and emotional ties to the patient than, and are not just, "random members of the public," they nevertheless fall far short of reaching the unique nexus that meets the special relationship standard of *Renslow.* Plaintiffs argue in the alternative that this court should extend the exception provided in *Renslow* to encompass family members in this circumstance. Fortunately, there is at least some authority on this question.

In *Sullivan v. Cheshier,* 846 F.Supp. 654 (N.D.Ill.1994) (Zagel, J.), the court addressed a very similar suit in which the parents of a therapist's patient sued the therapist for malpractice, professional negligence, and intentional infliction of emotional distress in allegedly inducing a similar "False Memory" of alleged abuse by one of the patient's siblings. The *Sullivan* court addressed the statute of limitations on the various claims, but concluded that the statute of limitations for malpractice was inapplicable to the case because the therapist was not a licensed practitioner. *Sullivan,* 846 F.Supp. at 660. The Court then stated generally that Illinois allows parents to recover where malpractice damaged the parent-child relationship only where the malpractice causes the death of the child. *Id.* Indeed, the Court cited *Dralle v. Rudner,* 124 Ill.2d 61, 124 Ill.Dec. 389, 394–95, 529 N.E.2d 209, 214–15 (1988) for the proposition that a parent cannot sue for a loss of filial society that occurs as a result of malpractice, except where that malpractice results in the death of the child. *Sullivan,* 846 F.Supp. at 660 (citing *Bullard v. Barnes,* 102 Ill.2d 505, 82 Ill.Dec. 448, 468 N.E.2d 1228 (1984)). Although *Dralle* "left open the question of whether this rule would apply to acts 'intentionally and directly interfering with the parent-child relationship,'" the *Sullivan* court cited a case from this district for the proposition that "even intentional interference between parent and child is not actionable." *Sullivan,* 846 F.Supp. at 660 (citing *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities,* 786 F.Supp. 1340, 1364–65 (N.D.Ill.1992) (Shadur, J.)). The *Sullivan* court concluded that it did not need to reach the question of whether the Illinois Supreme Court would allow a family-member's suit on a FMS intentional tort because that claim was barred by the statute of limitations. *Sullivan,* 846 F.Supp. at 661. However, the *Sullivan* court did allow the plaintiffs to go forward on their malpractice claim, albeit in a confusing manner. The court stated that the plaintiffs asked that their complaint be read to allege that the damage by the defendant doctor was "inflicted upon the plaintiffs by the reckless or

intentional acts of defendant directed toward the plaintiffs," although the counts upon which the court denied the motion to dismiss sounded in malpractice and loss of society. *Sullivan*, 846 F.Supp. at 661. This is confusing because malpractice is a negligence theory, *Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 603, 474 N.E.2d 13, 17 (2d Dist. 1985); *see* Black's Law Dictionary 864 (5th ed. 1979), yet the *Sullivan's* (and the court) construed the malpractice claim as an intentional or reckless tort. The *Sullivan* court addressed the defendant's argument that there was no evidence to support the contention that the defendant intentionally or recklessly acted toward the plaintiffs (thereby committing malpractice) and found defendant's argument meritless. *Sullivan*, 846 F.Supp. at 662. It thus allowed the malpractice count to stand.

This court concludes that the concept of duty should be a means by which to "direct and control the course of the common law" and thus the expanse of potential award recipients. *See Renslow*, 10 Ill.Dec. at 488, 367 N.E.2d at 1254. It also concludes that absent a "special relationship" which is either physically dependent or a very near approximation thereof, Illinois courts would not allow third parties such as these plaintiffs to recover on a *malpractice* or *negligence* claim under the circumstances of this case. *Cf. Sullivan*, 846 F.Supp. at 662. However, this court comes to this conclusion for a more fundamental reason than has yet been advanced. The primary reason why doctors and psychiatrists should not be held to have a duty to third party, non-patients is simple: doctors should owe their duty *to their patient* and not to anyone else. *See* The World Medical Association Declaration of Geneva, *reprinted in* Tom L. Beauchamp & James F. Childress, Principles of Biomedical Ethics 330–31 (2d Ed.1983) (The "Physician's Oath" adopted by the World Medical Association requires doctors to pledge that "the health of my patient will be my first consideration."). In this case Amy, who presumably is competent, has not claimed that the treatment she received was improper. Had she done so, the question would be much closer. The practice of medicine is fraught with legal potholes, and doctors should not have to navigate over new crevasses created by a heavy-handed judiciary. For purposes of standing to assert a malpractice claim, doctors should be free to recommend a course of treatment and act on the patient's response to the recommendation free from the possibility that someone other than the patient might complain in the future. Even if the patient is so injured as a result of the injury that she cannot complain later, any action should be brought on behalf of the patient.

This court therefore grants defendants' motions to dismiss the medical malpractice and the negligence claims (Counts I, II, VI, VII, VII, IX, XIII, XIV, XIX, XX, XXIV, XXV).

**B. Intentional Infliction of Emotional Distress**

■ Defendants move to dismiss any count alleging Emotional Distress. To plead a claim for emotional distress, the complaint must allege the following: (1) that the conduct in question was extreme and outrageous; (2) that the actor intended or knew that there was a high degree of probability that the conduct would inflict severe emotional distress; (3) that the conduct did in fact cause such distress. *Lopacich v. Falk*, 5 F.3d 210, 212 (7th Cir.1993) (quoting *McGrath v. Fahey*, 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988)). A "calculated campaign" is not necessary to show "extreme and outrageous conduct" *See Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 623 (7th Cir.1989) (citing *Miller v. Linden*, 172 Ill.App.3d 594, 122 Ill.Dec. 675, 677, 527 N.E.2d 47, 49 (1st Dist.1988) (whether conduct is extreme or outrageous is objectively determined on a case-by-case basis)). The conduct must be more than "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Schroeder*, 875 F.2d at 623 (citations omitted). The conduct must go beyond all possible bounds of decency to be considered extreme and outrageous. *Id.*

■ The defendants maintain that their alleged actions do not amount to "extreme and outrageous conduct." This court is not prepared to hold as a matter of law that a mental health professional who "falsely con-

vinced [the patient] that she was abused by [her] father" has not engaged in conduct that is extreme and outrageous. (Amended Complaint, at ¶ 19). As stated before, this determination is made on a case-by-case basis. Defendants cite no authority for holding that these facts do not satisfy the requirement. Note that *Sullivan v. Cheshier* is not inapposite: in that case, the court dismissed the Emotional Distress claim against the therapist because the Statute of Limitations had run. *Sullivan*, at 661.

Dr. Cassens further argues that "it is questionable whether the tort of intentional infliction of emotional distress is ever appropriate under Illinois law in a medical negligence action." (Motion to Dismiss, at p. 11). A plaintiff is always permitted to allege alternative, and sometimes even conflicting, theories of recovery. *See* Fed.R.Civ.P. 8(a) ("Relief in the alternative or of several different types may be demanded."). In addition, since the court will dismiss the Malpractice and Negligence counts pursuant to this memorandum opinion, the inconsistency pointed out by Dr. Cassens no longer exists. The court therefore denies defendants' motion to dismiss the claims for Intentional Infliction of Emotional Distress (Counts III, X, XV, XVII, XXI, XXVI).

## C. Loss of Society

■ Defendants move to dismiss all the claims alleging Loss of Society due to the alienation of their daughter. *Erie* and its progeny direct a federal court sitting in diversity to apply state law as interpreted by the highest court of that state. If the highest court has not addressed the issue, the district court is to predict how that court would decide it given the same context. *Miller v. Pardner's, Inc.,* 893 F.2d 932, 934 (7th Cir.1990); *Sundstrand Corp. v. Lake Shore, Inc.,* 840 F.Supp. 588 (N.D.Ill.1994). The essential question is: does Illinois recognize a cause of action for Loss of Society stemming from non-fatal injuries? The Northern District of Illinois has addressed this very

question twice before, unfortunately with conflicting results.

■ Both parties cite in support of their position the Illinois Supreme Court case of *Dralle v. Ruder,* 124 Ill.2d 61, 124 Ill.Dec. 389, 529 N.E.2d 209 (1988). In that case, a mother sued physicians for loss of society resulting from negligent care the child received before and at the time of its birth. The Court framed the facts as illustrating derivative, or indirect interference with the family relationship and held that there was no cause of action and dismissed the case. The court provided three reasons for declining to enlarge liability in this area: "[1] The availability of a tort remedy to the injured child, [2] the possible multiplication of claims, and [3] the difficulty of determining damages." *Dralle,* 124 Ill.Dec. at 393, 529 N.E.2d at 213.

In the case at bar, plaintiffs have alleged a direct interference with the family relationship, rather than a derivative one as in *Dralle.* Judge Shadur addressed direct interference in the familial relationship in *Alber v. Illinois Dept. of Mental Health,* 786 F.Supp. 1340 (N.D.Ill.1992). After citing the tripartite rationale of *Dralle,* Judge Shadur concluded that, "None of those factors really varies in its applicability just because the tort feasor intended to disrupt the relationship of parent and child rather than negligently inflicting particularized injury on a member of that relationship." After extrapolating *Dralle* to cover intentional, direct non-fatal interference, he dismissed plaintiffs' claims for loss of society.

Two years later Judge Zagel addressed the exact same issue in *Sullivan,* 846 F.Supp. at 654. Judge Zagel respectfully disagreed with Judge Shadur by pointing out that the rationales of *Dralle* did not apply to the facts of his [and our] case: since the patient was convinced that the sexual abuse had occurred, she was not likely to bring a suit against the doctor. This also means that the possibility of multiple claims was remote.[5]

---

5. At least no more possible usual: for the normal Loss of Society claims brought under the Wrongful Death Statute, Illinois law recognizes the right of siblings to also recover. *In re Estate of Finley,* 151 Ill.2d 95, 176 Ill.Dec. 1, 601 N.E.2d

699 (1992). In the instant case, allowing the father, the daughter, and the brother standing to sue does not encourage multiplicity of claims that *Dralle* or Judge Shadur feared since each

*Sullivan,* 846 F.Supp. at 661. Additionally, the "difficulty in determining damages" rationale does not apply to these facts either: while as a general rule, Loss of Society is not a form of damage "capable of being determined with arithmetic certainty" (*Drews v. Gobel Freight Lines, Inc.,* 144 Ill.2d 84, 161 Ill.Dec. 324, 330, 578 N.E.2d 970, 976 (1991)), *Dralle* is concerned about the unique difficulty of a jury cognitively separating the child's damages from the parents' if both were to maintain distinct causes of action. *Dralle* 124 Ill.Dec. at 393, 529 N.E.2d at 213; interpreted by *Barkei v. Delnor Hospital,* 176 Ill.App.3d 681, 126 Ill.Dec. 118, 128, 531 N.E.2d 413, 423 (2d Dist.1988), *appeal denied,* 125 Ill.2d 563, 130 Ill.Dec. 478, 537 N.E.2d 807 (1989). This problem is also absent from the case at bar because the patient/daughter believes she has been "cured" by the defendants, and thus she will have no desire to sue them for malpractice.

This court believes that Judge Zagel has poignantly questioned Judge Shadur's reasoning to the point of making it non-persuasive, but dismissing one theory does not call for application of another without an independent basis for support. After disposing of Shadur's reasoning, Judge Zagel concludes "I do not believe the [Supreme Court of Illinois] would preclude an intentional tort suit under the specific facts alleged here." This court agrees, and the support for this decision can be found within the *Dralle* opinion itself.

The *Dralle* court noted that "We do not consider at this time the **nature or extent** of the recovery in cases based on what has been termed a 'direct interference' with the parent-child relationship, as opposed to the indirect interference involved here ... recognition of a cause of action for direct interference does not entail recovery for the type of harm asserted here." (citations omitted, emphasis added).[6] If the court did not want to recognize the direct interference claim, it would not have gone through the trouble of

distinguishing its holding from *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1st Dist.1984) (loss of society action maintained where father had alleged that former spouse and psychiatrist had conspired to "brainwash" his son in an attempt to destroy their relationship) and *Kunz v. Deitch,* 660 F.Supp. 679 (N.D.Ill.1987) (Loss of society action sustained where widowed father sued maternal grandparents for attempting to put father's son up for adoption without father's knowledge or consent): it could have simply held that there is no cause of action for interference resulting in non-fatal injuries, period, thereby overruling those two cases. In addition, the second part of the above quote simply makes the argument that recognizing an action for direct interference does not necessitate recognizing a similar action for derivative interference. The court would not have to point this out if it didn't recognize direct interference to begin with. It is the court's very insistence that *Dralle* is not a direct interference case that shows its approbation and desire to preserve those cases.

*Dralle* implicitly recognizes a cause of action for direct interference with filial relationships and recovery for Loss of Society stemming from that interference. Illinois cases subsequent to *Dralle* conform to this analysis. *See, e.g. Person v. Behnke,* 242 Ill.App.3d 933, 183 Ill.Dec. 702, 707, 611 N.E.2d 1350 1355 (4th Dist.), *appeal denied,* 152 Ill.2d 579, 190 Ill.Dec. 909, 622 N.E.2d 1226 (1993) (permitting non-fatal direct interference claim as being consistent with the holding in *Dralle* ). This court therefore denies defendants' motion to dismiss those counts (Counts IV, XI, XVI, XVIII, XXII, XXVII).

### D. Public Nuisance

■ The therapist moves to dismiss plaintiffs' counts that allege Public Nuisance. The "Clinical Psychologist Licensing Act"

---

plaintiff would had a claim in all Loss of Society cases anyway.

**6.** The words "nature" and "extent" are probative of the court's focus on the kinds of damages that would be available under a derivative interference claim. The quoted sentence can simply be

read as an admonition not to apply any of the damages analysis to direct interference claims rather than as a way of reserving the right to completely deny an alternative basis for recovery.

provides in part that, "No individual ... shall without a valid license as a clinical psychologist ... hold himself out to the public as a clinical psychologist or render or offer to render clinical psychological services as defined in this Act." 225 ILCS 15/1 et seq. Illinois law recognizes a private right of action based on a statutory regulatory violation such as the above only if: (1) the plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) the plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act. *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill. Dec. 489, 496, 574 N.E.2d 602, 609 (1991) (finding a right of action by a patient treated by an unlicensed psychologist). In *Sullivan*, this district recognized a cause of action for public nuisance brought by the parents of the patient who received treatment from an unlicensed clinical psychologist.

■ Neither the *Sullivan* court nor the parties in this action analyze the propriety of the public nuisance claim with regard to the four requirements listed above. Absent such an inquiry by the moving party and based on this district's prior recognition of such a claim this court will give the benefit of the doubt to the plaintiffs and deny the defendants' motion to dismiss. However, plaintiffs will not be able to win on their Public Nuisance claims if they lose on the other counts which allege specific forms of injury such as Emotional Distress and Loss of Society; it is clear that Illinois law following *Corgan* still requires as part of the prima facie case that the plaintiffs have been injured by the unlicensed psychologist. *Corgan*, 158 Ill.Dec. at 497, 574 N.E.2d at 610. Defendants' motion to dismiss the Public Nuisance claims (Counts V, XII, XXIII) is denied.

### E. Health Art Affidavit

■ Alternatively, defendants argue that the "health art affidavit" submitted by plaintiffs, which is required by Illinois law as a prerequisite to filing a medical malpractice

claim, is insufficient. Illinois law requires that before bringing suit against a health care provider for health art malpractice, a plaintiff must acquire an affidavit from a third party health professional who, after reviewing the medical record and other materials, has concluded that the cause of action contemplated is not meritless. 735 ILCS 5/2–622. In addition, "Failure to file a certificate required by this Section shall be grounds for dismissal." *Id.*, at § 622(f). The purpose of this statute is to "deter the filing of frivolous medical lawsuits and to insure the meritoriousness of those causes which are filed." *Peterson v. Hinsdale Hosp.*, 233 Ill.App.3d 327, 174 Ill.Dec. 538, 599 N.E.2d 84 (2d Dist.1992).

■ Cases addressing the application of this statute have concluded that it should be liberally construed to allow compliance whenever possible: the statute represents a mere pleading technicality, and any defect can be easily cured by granting leave to amend. *Thompson by Thompson v. Heydemann*, 231 Ill.App.3d 578, 173 Ill.Dec. 40, 43, 596 N.E.2d 664, 667 (1st Dist.1992). Most importantly whether to dismiss a complaint at all for failure to obtain an adequate affidavit remains in the sound discretion of the trial court judge. *Id.*, 173 Ill.Dec. at 44, 596 N.E.2d at 668. For example, in *Sullivan*, the court found the required affidavit to be adequate, even though the affiant had not examined the medical records. *Sullivan*, 846 F.Supp. at 660 n. 6. The court noted that "This is not good practice" but supported the affidavit anyway because the plaintiffs did not have access to the medical records. *Id.*

■ Defendants assert that the affidavit filed is insufficient because the affiant did not examine the medical records. (Motion to Dismiss, at p. 14). Plaintiffs maintain that they were not allowed access to the medical records, and thus, relying on *Sullivan*, the affidavit as it has been submitted is sufficient. (Response, at p. 7). This is certainly a good defense to not having read them.[7] Given the factual similarities between this case and *Sullivan*, coupled with the liberal

---

7. The "Confidentiality Act", 740 ILCS 110/1 et seq., probably should not apply to the records in this case because the therapist, being unlicensed, does not come under the Act's provisions. *See Sullivan v. Cheshier*, 1995 WL 437499 (N.D.Ill. 1995).

construction of the statute, the "healing art affidavit" in this case is more than sufficient. The allegations against the defendants appear to have merit here, thus the purpose behind the statute has been met, even if literal compliance with it has not.

In addition, the affidavit is only necessary in malpractice actions: having decided to dismiss those counts alleging malpractice, plaintiffs are not required to file an affidavit with respect to the remaining claims since they do not involve Healing Art Malpractice. Defendants' motion to dismiss the entire complaint for this technicality is therefore denied.

### F. Punitive Damages

 The defendants have moved to strike any claim for punitive damages pursuant to Fed.R.Civ.P. 12(f). The applicable Illinois statute provides: "In all cases in which the plaintiff seeks damages by reason of ... healing art malpractice, no punitive damages shall be allowed." 735 ILCS 5/2–1115; see *Russell by Russell v. Good Shepherd Hosp.*, 222 Ill.App.3d 140, 164 Ill.Dec. 756, 583 N.E.2d 672 (2d Dist.1991). Plaintiffs respond by arguing that, at the very least, this statute does not apply to the claims against defendant Moore because she was not a licensed psychologist.

This statute does not apply to the remainder of this case. As discussed above, the malpractice and negligence counts are dismissed, leaving claims for intentional infliction of emotional distress, loss of society due to interference with family relations, and public nuisance. These three claims are **not** claims for malpractice. If they were, the whole case would be dismissed based for a lack of a "special relationship" as discussed above. Defendants do not argue this, and for good reason. At the heart of any malpractice claim is the assertion that the plaintiff had a duty of care which was breached. None of the elements of the remaining claims involves this type of inquiry or proof.[8] Therefore, the remaining claims do not come

under the rubric of "malpractice." The motion to strike punitive damages is thus denied with respect to the remaining claims alleged against both defendants. *Williams v. Chicago Osteopathic Med. Ctr.*, 173 Ill.App.3d 125, 122 Ill.Dec. 911, 527 N.E.2d 409 (1st Dist. 1988) (a suit against a physician that does not fall within the scope of "healing art malpractice" can allege punitive damages).

### CONCLUSION

WHEREFORE, the defendants' motion to dismiss the Amended Complaint is GRANTED with prejudice with respect to claims of negligence and malpractice (Counts I, II, VI, VII, VIII, IX, XIII, XIV, XIX, XX, XXIV, XXV) and DENIED with respect to all other counts. The court also DENIES defendants' motion to strike claims for punitive damages.

---

8. The methodology of "Recovered Memories" will undoubtedly play a role in the remaining counts in some way: showing that this is an accepted form of therapy might mitigate the "extreme and outrageousness" of the behavior or obviate the "intentional" and "direct" elements of the Filial Interference. In neither instance, however, will plaintiff have to establish a professional duty to prevail on these claims.