JOHN DOE, Plaintiff-Appellant, v. BOBBIE McKAY *et al.*, Defendants-Appellees (Vicki Seglin, Defendant).

Second District   No. 2—96—0532

▬▬▬▬▬▬

Opinion filed March 17, 1997.

Zachary M. Bravos, of Law Offices of Zachary M. Bravos, and James H. Knippen, of Walsh, Knippen, Knight & Diamond, Chartered, both of Wheaton, for appellant.

Stephen C. Veltman, Marlene A. Kurilla, Robert Marc Chemers, and Scott L. Howie, all of Pretzel & Stouffer, Chartered, of Chicago, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, John Doe, appeals the order of the circuit court of Du Page County granting defendants', Bobbie McKay, Ph.D., and Bobbie McKay, Ph.D., Ltd., motions to dismiss various counts of plaintiff's

complaint for failure to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)).

Plaintiff alleged the following facts, which we assume to be true for purposes of the section 2—615 motion to dismiss. *Schuster Equipment Co. v. Design Electric Services, Inc.*, 197 Ill. App. 3d 566, 569 (1990). Beginning in 1990 and continuing through at least October 1995, plaintiff's daughter, Jane Doe, underwent psychological treatment including diagnosis, therapy, and psychotherapy under the care of defendants. During the course of this treatment, she discovered repressed memories of alleged sexual abuse by plaintiff.

Defendants subscribe to the theory that mental or emotional problems in adults are often the result of childhood sexual abuse that is "repressed" from conscious memory as a defense mechanism so that the person has no recollection of the abuse. Additionally, defendants believe that "repressed memories" can be accessed with the techniques they utilize and "healing" can occur when the patient recovers previously "repressed" memories and deals with the consequent emotional turmoil.

During a session at which defendant McKay, Jane Doe, and plaintiff were present, and at the direction of McKay, Jane Doe accused plaintiff of sexually abusing her when she was approximately 11 years old. During this session, plaintiff alleged that McKay, not Jane Doe, repeatedly suggested to Jane Doe that plaintiff might further harm her. McKay advised plaintiff that his daughter's memory of the alleged abuse was supposedly "repressed" until retrieved during therapy with McKay. McKay also advised plaintiff that plaintiff had repressed his own memories of abusing Jane Doe and recommended that he commence treatment at defendant's facility with another therapist. Plaintiff saw the other therapist individually and participated in joint sessions with Jane Doe and McKay.

Plaintiff subsequently was advised by Jane Doe that the session with McKay was arranged by McKay to maximize the shock effect and force a confession from plaintiff regarding the alleged abuse. Plaintiff denies that he ever sexually abused his daughter.

During a joint session on September 9, 1992, McKay made further allegations of sexual abuse against plaintiff and told him of a specific act of alleged abuse. On October 27, 1992, at another joint session, McKay again asserted that Jane Doe and plaintiff had repressed their memories of plaintiff's alleged sexual abuse. McKay told them that the only explanation for Jane Doe's condition was that she had been abused by plaintiff and had repressed the memory of that abuse.

In 1994, plaintiff filed suit against defendants. He sought recovery under various theories against the psychologist individually and the professional association based upon *respondeat superior*. While the first amended complaint lists 17 counts, there are, in essence, only two causes of action of relevance to this appeal: the negligent treatment of Jane Doe by defendants, which constituted a breach of a duty of care owed to plaintiff thereby depriving him of his daughter's society and companionship (counts I and XI), and intentional interference with the parent-child relationship (counts IV and XIV) with the resulting loss of his daughter's society and companionship (counts V and XV). Other claims against defendants remain pending in the trial court. Plaintiff's daughter, Jane Doe, is not a party to this suit and has not averred that defendants mistreated her. Plaintiff alleged that he paid $3,208 to defendants for some of the treatment rendered to his daughter in 1992, but there are no allegations or attached documents which acknowledge that plaintiff engaged defendants to treat his daughter.

Defendants filed motions to dismiss those counts of the complaint sounding in negligence and loss of society, arguing that Illinois law does not recognize the theories of liability asserted against them by plaintiff. The trial court agreed and granted their motions to dismiss those counts, finding that Illinois does not recognize recovery for the loss of society and companionship. Plaintiff's timely notice of appeal is limited to the dismissal of counts I, IV, V, XI, XIV, and XV.

■ When reviewing the dismissal of a complaint pursuant to section 2—615, we must determine whether the complaint, when considered in the light most favorable to the plaintiff, alleges facts sufficient to state a cause of action. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46 (1991). When assessing the sufficiency of the complaint, we must take as true all well-pleaded facts and reasonable inferences drawn from those facts. *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 662 (1995). We are not required to defer to the trial court's judgment, as our review is *de novo*. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084 (1994).

■ Plaintiff contends that his claims for negligence resulting in the loss of society with his daughter were improperly dismissed. A legally sufficient complaint for negligence must set forth facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). Whether a duty exists is a question of law that depends on whether the parties stood in such a relationship to one another that the law will impose an obligation on the defendant to

act reasonably for the protection of the plaintiff. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542 (1991). In determining whether a duty exists, the court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. *Gouge*, 144 Ill. 2d at 542.

■ Generally, a nonpatient third party cannot maintain a malpractice action absent a direct physician-patient relationship between the doctor and the patient or a special relationship between the patient and the third party under the doctrine of transferred negligence. *Kirk*, 117 Ill. 2d at 531. In this appeal, plaintiff argues that defendants owed him a duty because of his relationship with his daughter and because defendants directly involved plaintiff in his daughter's treatment.

Transferred negligence was first discussed in *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348 (1977). When the plaintiff's mother was 13 years old, the defendants negligently transfused her with incompatible blood, thereby sensitizing her blood. The defendants did not inform the mother that she had been transfused with incompatible blood, and she first learned that her blood had been sensitized eight years later, when she was pregnant with the plaintiff. The plaintiff suffered permanent physical damage because of the earlier sensitization of her mother's blood.

The Illinois Supreme Court held that a nonpatient third party without a patient-hospital or patient-doctor relationship could nevertheless maintain a cause of action against a hospital and doctor. *Renslow*, 67 Ill. 2d at 357. The supreme court noted that, as a general rule, negligence could not be founded upon the breach of a duty owed to some person other than the plaintiff. *Renslow*, 67 Ill. 2d at 355. The court noted, however, that derivative actions, such as those of a husband or parent for the loss of the wife's or child's society, demonstrate that the law has long recognized that a wrong done to one person may invade the protected rights of one who is intimately related to the first. The court determined that in these cases, because of the nature of the relationship between the parties harmed, the law recognizes a limited area of transferred negligence. *Renslow*, 67 Ill. 2d at 357. The court concluded that logic and sound policy required the creation of a legal duty in that case because there was a right to be born free from prenatal injuries foreseeably caused by a breach of duty to one's mother. *Renslow*, 67 Ill. 2d at 357-58.

■ Similarly, we find transferred negligence to be applicable to the unique circumstances here. Key to this finding is the special relationship plaintiff shares with his daughter and the therapist's action

to bring plaintiff into the treatment process. At defendant McKay's direction, during the daughter's therapy sessions, plaintiff's daughter accused plaintiff of sexually abusing her, and McKay repeatedly suggested to plaintiff's daughter that plaintiff might further harm her. As we must take this allegation as true, McKay's orchestrated accusations directly involved plaintiff in the treatment process. Once plaintiff was immersed in his daughter's treatment process, as a quasi-patient himself, it was not only reasonably foreseeable, but a virtual certainty, that McKay's conduct would harm plaintiff's relationship with his daughter. See *Tuman v. Genesis Associates*, 894 F. Supp. 183, 187 (E.D. Pa. 1995) (under Pennsylvania law, therapist owed duty to patient's parents where therapist specifically undertook to treat child for parents coupled with reasonably foreseeable harm to an identifiable third party). Thus, we find that defendants' duty to use reasonable care in the treatment of their patient extended to plaintiff.

" ' "[D]uty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' " *Curatola v. Village of Niles*, 154 Ill. 2d 201, 215 (1993), quoting W. Keeton, Prosser & Keeton on Torts § 53, at 358 (5th ed. 1984). The risk and magnitude of harm to our society, namely, tearing a family apart without regard to the manner in which false accusations of sexual abuse are made, is so significant that it requires the protection of our law. A therapist's allegedly erroneous conclusion that a patient has been sexually abused by a parent endangers the parent-child relationship, but where the therapist draws the accused parent into the patient-child's treatment, accusations of sexual abuse are undeniably devastating and may not be made with impunity and disregard of the therapist's obligation of reasonable care. The therapist is in the best position to avoid such harm and is solely responsible for handling the treatment procedure. Defendants could have warned plaintiff and his daughter of the controversial nature of repressed memory therapy in separate sessions. We therefore hold that in a case such as this involving repressed memories of sexual abuse, where the parent is brought into the treatment process by the therapist, a therapist's duty to the patient to use reasonable care in the treatment process is extended to the parent.

■ Defendants argue that, even if we were to find there was a duty extended to plaintiff, all of plaintiff's claims must fail because under *Dralle v. Ruder*, 124 Ill. 2d 61 (1988), a parent cannot recover damages for the loss of society of a nonfatally injured child. Plaintiff points out that the *Dralle* decision does not allow recovery where the

harm to the parent-child relationship is an indirect or derivative result of an injury to the child. Plaintiff contends, however, that *Dralle* allows such damages where the actions complained of are specifically directed toward the parent-child relationship itself, whether negligently or intentionally.

In *Dralle*, the plaintiffs sued a pharmaceutical manufacturing company for damages arising from their son's birth defects and injuries. The parents based their claim for recovery on the loss of their son's companionship and society that resulted from these birth defects and injuries. The supreme court held that the plaintiffs could not recover under a theory of loss of filial society with their injured child because their claim arose as the derivative consequence of an injury to their child, and their son could maintain his own cause of action against the alleged tortfeasor. *Dralle*, 124 Ill. 2d at 68-69.

The *Dralle* court specifically distinguished the basis of its holding from the holdings in *Dymek v. Nyquist*, 128 Ill. App. 3d 859 (1984), and *Kunz v. Deitch*, 660 F. Supp. 679 (N.D. Ill. 1987), where the courts in those cases found a cause of action existed for acts directly and intentionally interfering with the parent-child relationship. In *Dymek*, the plaintiff's former wife and a psychiatrist allegedly conspired to separate the plaintiff from his son by brainwashing his son against him. *Dymek*, 128 Ill. App. 3d at 867-68. In *Kunz*, a divorced father had a cause of action for the loss of his son's society against his deceased wife's parents for their alleged attempts to put his son up for adoption. *Kunz*, 660 F. Supp. at 683-84. The *Dralle* court concluded that the recognition of a cause of action for direct interference with the parent-child relationship does not entail recovery for the type of harm asserted in *Dralle*. *Dralle*, 124 Ill. 2d at 73. Thus, *Dralle* left open the question of whether damages may be awarded for the loss of society and companionship resulting from acts that *intentionally* and *directly* interfere with a parent-child relationship.

In *Person v. Behnke*, 242 Ill. App. 3d 933 (1993), a case subsequent to *Dralle*, the court concluded that *Dralle* would allow a cause of action for direct interference with the parent-child relationship resulting from negligent and intentional conduct. There, the plaintiff brought a malpractice claim against his attorney seeking to recover damages for his loss of custody and visitation of his minor children in divorce proceedings in which the defendant attorney represented the plaintiff. Distinguishing its facts from those in *Dralle*, the *Person* court allowed the plaintiff's claim for direct interference with the parent-child relationship. *Person*, 242 Ill. App. 3d at 938-39.

Two federal district courts have likewise concluded that Illinois would recognize a direct cause of action for the loss of society stem-

ming from nonfatal injuries. *Lindgren v. Moore*, 907 F. Supp. 1183 (N.D. Ill. 1995); *Sullivan v. Cheshier*, 846 F. Supp. 654 (N.D. Ill. 1994). The *Lindgren* court determined that *Dralle* would not have distinguished its holding from *Dymek* and *Kunz* if it did not want to recognize a direct claim for the loss of society for the nonfatal injury of a child. *Lindgren*, 907 F. Supp. at 1191. But *cf. Alber v. Illinois Department of Mental Health & Developmental Disabilities*, 786 F. Supp. 1340, 1363 (N.D. Ill. 1992) (holding that Illinois would not recognize a general right of family members to recover for the loss of society).

We agree that *Dralle* implicitly recognizes a cause of action for direct interference with filial relationships and recovery for the loss of society stemming from that interference. Here, all of plaintiff's claims for the loss of his daughter's society result from the "direct and intentional interference" by defendants with plaintiff's parent-child relationship. Because of the similarities between the facts in this case and those in *Dymek, Kunz,* and *Person,* and our interpretation of *Dralle,* we hold that plaintiff may bring a claim for recovery of damages resulting from the loss of society and companionship of his daughter.

Defendants argue that the cases plaintiff relies upon are distinguishable from the present case because they involved only minor children and interference with the custodial parent's visitation rights. We fail to see how age or visitation rights make any difference to the relationship between a parent and child. Damages are allowed in a wrongful death action where the decedent has reached the age of majority. *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 120 (1986). Likewise, we see no reason to withhold recovery for the loss of society simply because the child is an adult. Accordingly, we find that the trial court incorrectly dismissed counts I, IV, V, XI, XIV, and XV.

For the foregoing reasons, the decision of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

GEIGER, P.J., and HUTCHINSON, J., concur.