Hungerford v. Jones                    CV-96-559-M   07/25/97   P
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Joel Hungerford

     v.                                      Civil No. 96-559-M

Susan L. Jones


                          O R D E R


     Plaintiff, Joel Hungerford, brings a diversity action
alleging state tort claims against Susan Jones, a therapist who
treated Hungerford's adult daughter, Laura Bachman, for a mental
health condition.  Hungerford contends that Jones's improper
diagnosis and treatment of Bachman caused her to recall false
memories of sexual abuse and to falsely accuse him of having
sexually abused her.  Jones has moved to dismiss all of
Hungerford's claims.  For the reasons that follow, the motion to
dismiss is granted as to Hungerford's claims for defamation,
intentional infliction of emotional distress, and loss of
consortium, but denied as to the negligence claims.  The court
proposes to certify questions related to the negligence claims to
the New Hampshire Supreme Court.


                      STANDARD OF REVIEW

A complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, the court accepts "as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In accord with the applicable standard, the background facts are taken from plaintiff's complaint and accepted as if true.

BACKGROUND

In August or September 1992, plaintiff's adult daughter, Laura Bachman, began treatment with defendant Susan Jones. Jones, a social worker, represented herself as a mental health therapist qualified and experienced in the treatment of problems associated with incest and sexual abuse. Before Bachman began therapy, she had no knowledge or memory of sexual abuse by her father. During therapy, Jones led Bachman to believe that

2

nightmares and anxiety attacks that she was experiencing were "flashbacks" and "recovered memories" of episodes of sexual assaults and abuse by her father. Jones also determined that Bachman's difficulties with intimate relationships and other psychological problems were the result of sexual abuse by her father.

Jones's treatment with Bachman included a memory retrieval technique Jones called "visualization" or "imagery" in which she lead Bachman into a self-induced trance to uncover allegedly lost memories of sexual assault. Through this technique, Jones caused Bachman to "recall" five episodes of sexual assault by her father, the first allegedly occurred when she was three years old and the last only two nights before her wedding. During Bachman's course of therapy, Hungerford authorized his own therapist to communicate with Jones in an effort to help Bachman realize that her "memories" were false. Jones, nevertheless, remained convinced that Hungerford had sexually assaulted his daughter.

In October 1992 at Jones's direction, Bachman cut off all contact with her father, and, in the spring of 1993, Bachman filed a complaint against her father with the Amherst, New Hampshire, police department charging aggravated felonious sexual assault. Jones contacted the Amherst police in support of

3

Bachman's complaint to verify Bachman's recollections of assault by her father and to encourage prosecution of Hungerford. Jones also met with the Hillsborough County Attorney to assist in the prosecution of Hungerford.

Hungerford was indicted by a Hillsborough County grand jury on two counts of aggravated felonious sexual assault and was held at the Hillsborough County jail for a substantial period of time. In a decree dated May 23, 1995, the Hillsborough County Superior Court, Groff, J., ruled that Bachman's "memories" of assault by her father were not scientifically reliable and would not be admissible at trial. The New Hampshire Supreme Court affirmed the Superior Court's ruling. State v. Hungerford, No. 95-529 (N.H., July 1, 1997).

Hungerford alleges that he was wrongfully accused of sexual assault based on Jones's improper diagnosis and treatment of his daughter. He further alleges that Jones's only training in memory retrieval techniques was a lecture she attended at a weekend symposium, that she in fact had limited experience in treating patients with repressed memories of sexual assault, and that she failed to consult with other mental health professionals for assistance in the diagnosis and treatment of Bachman's condition. Jones did not inform Bachman of her limited experience and training in memory retrieval or explain the

4

concerns of the professional community regarding its reliability and validity before beginning therapy. Hungerford also asserts that Bachman's "memories" of sexual assault are false and were caused by Jones's improper treatment.

DISCUSSION

Hungerford's complaint includes claims of professional malpractice and negligence, negligent and intentional infliction of emotional distress, loss of consortium, and defamation. Jones moves to dismiss all counts on grounds that Hungerford's complaint does not state claims cognizable under New Hampshire law. Jones's primary challenge focuses on whether she owed Hungerford any duty under the circumstances of this case. In addition, Jones specifically challenges Hungerford's claims for intentional infliction of emotional distress, defamation, and loss of consortium.

**A.    Duty to a Third Party To Use Reasonable or Professional Care in the Diagnosis and Treatment of a Patient**

Hungerford alleges that Jones had a duty to treat Bachman in a manner consistent with the professional standards applicable to mental health therapists and clinical social workers and that in breach of her duty, she failed to properly or competently

5

diagnose or treat Bachman, and failed to provide proper care and guidance to Bachman. As a result, Hungerford contends, Jones did not diagnose or treat the real cause of Bachman's psychological condition but instead caused her to believe, falsely, that she was the victim of sexual assault and abuse by her father. Hungerford further alleges that the resulting harm to him, damage to his reputation and relationship with his daughter, was foreseeable.

In her motion to dismiss, Jones argues that Hungerford's negligence claims must be dismissed because Jones did not owe any duty to Hungerford to use reasonable care in the diagnosis and treatment of Bachman.[1] As Hungerford acknowledges in his objection, the New Hampshire Supreme Court has not yet decided whether a therapist[2] owes a duty to a third party based on her

---

Jones also contends that even if the New Hampshire Supreme Court would impose such a duty under the circumstances of this case, she would be absolutely immune because all of the harm alleged resulted from reporting the allegations of abuse to the police. As a factual matter, at least some of the harm alleged is the result of alienation between father and daughter due to the diagnosis and treatment of abuse. The court declines to rule on the immunity question in this context until the scope of any legal duty is described.

Plaintiff argues that New Hampshire has previously recognized a physician's duty to a nonpatient third party in Edwards v. Lamb, 69 N.H. 599 (1899). In Edwards, however, the court found that when the physician treating plaintiff's husband's wound informed plaintiff that there was no danger of infection to her, he assumed the duty of using due care in providing medical advice to her. Edwards, 69 N.H. at 599. The

6

diagnosis and treatment of a patient.  Nevertheless, Hungerford asks this court to rule that the New Hampshire Supreme Court _would_ find that such a duty exists under New Hampshire's common law.

Certification of that legal question to the New Hampshire Supreme Court was discussed at the pretrial conference held on April 8, 1997.  Whether to certify a state law issue to the state's highest court is discretionary.  _Lehman Bros. v. Schein_, 416 U.S. 386, 391 (1974); _Nieves ex rel Nieves v. University of Puerto Rico_, 7 F.3d 270, 275 (1st Cir. 1993).  Certification is generally appropriate when the legal question is novel and the state's law on the question is unsettled.  _Lehman Bros._, 416 U.S. at 391; _accord_ _Arizonans for Official English v. Arizona_, 117 S. Ct. 1055, 1073 (1997); _Acadia Ins. Co. v. McNeil_, No. 96-2240, 1997 WL 317208 (1st Cir., June 17, 1997).

Under established New Hampshire law, whether an enforceable duty exists is a legal concept that focuses on the relationship between the parties, policy issues attendant to their relationship, and the foreseeability of harm.  _See, e.g._, _Marquay v. Eno_, 139 N.H. 708, 716 (1995); _Walls v. Oxford Management Co._, 137 N.H. 653, 656-57 (1993); _Island Shores Estates v. Concord_,

---

situation in the present case is readily distinguishable as the defendant here did not advise, treat, or have any direct relationship with the plaintiff.

7

136 N.H. 300, 304 (1992). While privity between parties no longer controls negligence liability, the New Hampshire Supreme Court has insisted upon "well-defined guidelines in order to prevent the imposition of remote and unexpected liability on defendants." Williams v. O'Brien, 669 A.2d 810, 813 (N.H. 1995). Thus, the question raised by Hungerford's claim, (i.e. Whether a therapist who diagnoses and treats a patient for conditions associated with alleged past sexual abuse owes a legal duty to the person accused to treat the patient in a professionally competent manner?) raises important issues regarding the scope of the state's common law of negligence, as well as related policy issues.

Jurisdictions which have considered the matter have reached divergent conclusions. Some have decided, primarily on policy grounds, that the common law does not impose liability on mental health care providers for negligent diagnosis and treatment of conditions associated with alleged past sexual abuse. See, e.g., Zamstein v. Marvasti, 692 A.2d 781 (Conn. 1997); Bird v. W.C.W., 868 S.W.2d 767 (Texas 1994); Strom v. C.C., 1997 WL 118253 (March 18, 1997, Minn. App.). Whether a defined relationship exists between a therapist and parent accused of abuse has been the determinative issue in other decisions. See, e.g., Tuman v. Genesis Assoc., 894 F. Supp. 183 (E.D. Pa. 1995); Doe v. McKay,

8

678 N.E.2d 50 (Ill.App.Ct. 1997); <u>Schwarz v. Regents of the Univ. of Calif.</u>, 276 Cal.Rptr. 470 (Cal.Ct.App. 1990) (distinguishing <u>Marlene F. v. Affiliated Psychiatric Medical Clinic Inc.</u>, 257 Cal.Rptr. 98 (1989)). Other courts have held that a therapist may be liable for actions based on a negligent professional diagnosis, such as directing the patient to sever ties with her family, notifying family members or authorities of abuse, or issuing a false report or recommendation. <u>See, e.g.</u>, <u>Sullivan v. Cheshier</u>, 846 F. Supp. 654 (N.D. Ill. 1994); <u>Caryl S. v. Child & Adolescent Treatment Servs. Inc.</u>, 614 N.Y.S.2d 661 (N.Y. App. Div. 1994); <u>Montoya v. Bebensee</u>, 761 P.2d 285 (Colo.Ct.App. 1988). Interpreting Vermont negligence law, the federal district court held that a psychiatrist's duty to third parties in diagnosing past sexual abuse depended upon the foreseeability of harm to the third party. <u>Wilkinson v. Balsam</u>, 885 F. Supp. 651 (D.Vt. 1995).

Given the wide range of results in other jurisdictions, and the important state law and public policy issues implicated in deciding whether a therapist owes a legal duty to a third party when diagnosing and treating conditions arising from alleged past sexual abuse, it seems apparent that the New Hampshire Supreme Court and not this court should decide what New Hampshire's common law is. For that reason, the court proposes to certify

9

the following questions to the New Hampshire Supreme Court

pursuant to New Hampshire Supreme Court Rule 34:

> 1.   Does a mental health care provider owe a legal
> duty to the father of an adult patient to diagnose and
> treat the patient with the requisite skill and
> competence of the profession when the diagnosis is that
> the father sexually abused or assaulted the patient?
>
> 2.   Does a mental health care provider owe a duty to
> act with reasonable care to avoid foreseeable harm to
> the father of an adult patient resulting from treatment
> or other action taken in relation to mental health
> conditions arising from the diagnosis of past sexual
> abuse or assault by said father?

The parties are invited to comment upon those questions, or

suggest different questions to be certified.  In addition, the

parties shall file a statement of stipulated facts to be included

in the certification order pursuant to New Hampshire Supreme

Court Rule 34.

The parties' responses to the proposed questions and the

statement of stipulated facts shall be filed within thirty days

of the date of this order.  If the parties do not file a

statement of stipulated facts within the time allowed, the court

will transmit the factual statement in this order as the

statement of facts relevant to the certified question, as

required by Supreme Court Rule 34.

In light of the court's decision to certify legal questions

controlling disposition of Hungerford's negligence and

professional malpractice claims, Jones's motion to dismiss those

10

claims cannot be resolved until the questions are answered. Accordingly, the motion to dismiss those claims is denied without prejudice to refiling the motion following the New Hampshire Supreme Court's decision on the certified questions.

**B.    Remaining Claims**

Jones also challenges Hungerford's claims for defamation, intentional infliction of emotional distress, and loss of consortium. Each is addressed in turn.

**1.    Defamation**

In his complaint, Hungerford alleges that Jones's letter to the Amherst Police Department and her discussions with the Hillsborough County Attorney's Office in which she reported that he raped and sexually assaulted his daughter were false and defamatory. Jones moves to dismiss the claim on grounds that she is absolutely immune from defamation liability for statements made to police and prosecutors. Hungerford responds that "pertinence" and the absence of bad faith are prerequisites of immunity, so that dismissal prior to factual development of those issues would be premature. See McGranahan v. Dahar, 119 N.H. 758, 763 (1979).

Hungerford misunderstands the nature of "bad faith" in the context of the absolute privilege afforded by McGranahan.  The absolute privilege afforded to statements made in the course of judicial proceedings is not conditioned on good faith.  Id. at 762.  The only limitation on the protection of the privilege provided by McGranahan requires that the statements be "pertinent to the subject matter of the proceeding."  Id. at 763.  While the pertinence requirement "eliminates protection for statements made needlessly and wholly in bad faith,"  the privilege does not require good faith or even an absence of malice in making the statements.  Id.

Jones's statements to police and prosecutors concerning her understanding of Bachman's "memories" and allegations of sexual assault by Hungerford were of course pertinent to the charges brought against him and to the prosecution for sexual assault.  Hungerford alleges that the charges arose from Jones's negligent diagnosis and treatment of Bachman, not that they were intentionally concocted to smear him.  No facts pled in the complaint remotely suggest circumstances in which Jones's statements were made "needlessly" or "wholly in bad faith."  To the extent Jones may have acted with malice toward Hungerford in contacting the police or cooperating with prosecutors, her intent would not deprive her of the privilege.

12

McGranahan also explains that a defamation cause of action cannot redress harm caused by statements made to police and prosecutors by persons accused of crimes but not convicted. Id. at 769. "Except in extreme cases, for which malicious prosecution or abuse of process are adequate remedies, a person wrongfully accused of a crime must bear that risk, lest those who suspect wrongful activity be intimidated from speaking about it to the proper authorities for fear of becoming embroiled themselves in the hazards of interminable litigation." Id. Accordingly, Hungerford's defamation claim based on Jones's reports to the police and prosecutors must be dismissed either because Jones's statements are protected by absolute privilege or because the harm alleged cannot be redressed through a defamation claim under New Hampshire law.

## 2. Intentional Infliction of Emotional Distress

To state a claim of intentional infliction of emotional distress, a party must allege that the defendant "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress." Morancy v. Morancy, 134 N.H. 493, 496 (1991). Knowingly false accusations of sexual assault in certain circumstances might well constitute extreme and outrageous conduct actionable as intentional infliction of emotional

13

distress.  However, negligent, even grossly negligent, misdiagnosis and treatment of mental health conditions arising from past sexual abuse, leading to false accusations and reports of sexual assault, as alleged here, are insufficient to state a cause of action for intentional infliction of emotional distress. Accordingly, the claim is dismissed.

### 3. Loss of Consortium

Hungerford seeks compensation for loss of the society and companionship of his daughter.  In response to Jones's motion to dismiss, Hungerford acknowledges that in <u>Siciliano v. Capitol City Shows, Inc.</u>, 124 N.H. 719, 725 (1984), the New Hampshire Supreme Court ruled that parents cannot recover for the loss of a child's society.  Hungerford contends, instead, that his loss of consortium claim is in actuality a claim for interference with parental custody and family relationship as recognized in <u>Plante v. Engel</u>, 124 N.H. 213 (1983).

The claim recognized in <u>Plante</u> focused on intentional interference with parental <u>custody</u> of children who are improperly or illegally separated from their parents, or from one parent, as a result of a custody dispute incident to divorce, kidnaping, or other "antisocial conduct." <u>Siciliano</u>, 124 N.H. at 727.  As Bachman, Hungerford's daughter, was an emancipated adult when she

14

began treatment with Jones and was no longer a member of Hungerford's household or in his "custody," an interference with custody claim is not maintainable and is dismissed.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (document no. 4) plaintiff's professional malpractice and negligence claims is denied without prejudice to refiling, as to those issues, and is granted as to plaintiff's claims for defamation, intentional infliction of emotional distress, and loss of consortium. The parties' responses to the court's proposed questions for certification, and the stipulated factual statement, shall be filed within thirty days of the date of this order.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 25, 1997

cc:  Paul A. Maggiotto, Esq.
     Robert W. Upton, II, Esq.
     Edward M. Kaplan, Esq.

15