Docket No. 83094–Agenda 11–March 1998.

JOHN DOE, Appellee, v. BOBBIE McKAY, Ph.D., 
et al.
, Appellants.

Opinion filed June 18, 1998.

JUSTICE MILLER delivered the opinion of the court:

The pseudonymous plaintiff, John Doe, brought the present action in the circuit court of Du Page County seeking damages relating to the psychological treatment rendered to his daughter by the defendants, Bobbie McKay, Ph.D., and McKay's employer, the professional corporation of Bobbie McKay, Ph.D., Ltd. Following a hearing, the trial judge granted the defendants' motions to dismiss various counts of the plaintiff's amended complaint for failure to state a cause of action. The plaintiff appealed the circuit court's dismissal of counts that sought recovery on theories of negligence and intentional interference with a family relationship. The appellate court reversed the dismissal of those counts, concluding that they stated causes of action. We allowed the defendants' petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

The circuit court dismissed the challenged portions of the amended complaint under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1994)) for failure to state a cause of action. Our review of that ruling is 
de novo
 (
Vernon v. Schuster
, 179 Ill. 2d 338, 344 (1997)), and it requires us to assume the truth of all well-pleaded factual allegations in the plaintiff's amended complaint (
People ex rel. Daley v. Datacom Systems Corp.
, 146 Ill. 2d 1, 11 (1991). According to the allegations in the amended complaint, beginning in 1990 and continuing through October 1995, when the amended complaint was filed, the plaintiff's daughter, Jane Doe, underwent psychological treatment under the care of defendant Bobbie McKay, a licensed clinical psychologist. During the course of this treatment, Jane Doe supposedly discovered repressed memories of sexual abuse allegedly committed by the plaintiff. Jane Doe, who was born in 1964, had not been aware of these memories before beginning her treatment with Dr. McKay.

According to the amended complaint, during a counseling session attended by McKay, Jane Doe, and the plaintiff on February 6, 1992, Jane Doe accused the plaintiff of sexually abusing her when she was about 11 years old. Also during this session, McKay suggested to Jane Doe that the plaintiff might harm her further. At that time, McKay told the plaintiff that his daughter's memories of the alleged abuse had been repressed until they were retrieved during therapy, and that the plaintiff had repressed his own memories of the abuse. McKay recommended that the plaintiff commence treatment with another therapist; McKay spoke with the plaintiff the next day by telephone and recommended that he see Vicki Seglin, another psychologist employed by the McKay practice. The plaintiff saw Seglin individually until October 1992. The plaintiff further alleges that he later learned from his daughter that the February 6, 1992, session was arranged by the therapist to maximize the shock effect of his daughter's accusation and to force from the plaintiff a confession regarding the alleged abuse. The plaintiff denies that he ever sexually abused his daughter.

The amended complaint also alleges that at a counseling session on September 9, 1992, attended by McKay, Jane Doe, and the plaintiff, McKay told the plaintiff of the specific act of abuse he allegedly committed against his daughter. At that time, McKay again asserted that the plaintiff and his daughter had repressed their memories of the abuse. Later, at a session held on October 27, 1992, which was attended by McKay, Seglin, Jane Doe, and the plaintiff, McKay stated again that Jane Doe and the plaintiff had repressed their memories of the plaintiff's alleged sexual abuse. On this occasion, McKay said that the only explanation for Jane Doe's psychological condition was that she had been abused by the plaintiff.

Regarding the method of treatment employed in Jane Doe's case, the plaintiff alleges that McKay believes that mental or emotional problems in adults are often the result of childhood sexual abuse, the memory of which has been repressed. The plaintiff further asserts that McKay believes that previously repressed memories of abuse can be recalled with the techniques she uses, and that “healing” can occur when a patient recovers those memories and resolves the ensuing emotional turmoil. The plaintiff asserts that McKay's views regarding repression and the recovery of repressed memory are not supported by scientific evidence and are not generally accepted by the psychological community. The plaintiff further alleges that he paid a total of $3,208 for services rendered by McKay to his daughter from January through August 1992, and that he paid a total of $4,435 for services rendered to him by Vicki Seglin from February through October 1992. Jane Doe is not a party to this action, and she has not alleged any malpractice by the defendants.

The plaintiff commenced the present action on September 9, 1994. The plaintiff sought recovery from McKay and Seglin individually and, under a theory of 
respondeat superior
, from the professional corporation with which they were associated, Bobbie McKay, Ph.D., Ltd. The circuit court granted the plaintiff's request to permit him to use the pseudonym “John Doe” in these proceedings; his daughter, the subject of the challenged treatment, is identified similarly as “Jane Doe.” The plaintiff's amended complaint comprised 17 counts, and it sought recovery on theories of negligence–toward both the plaintiff and his daughter–intentional interference with a parent-child relationship, intentional infliction of emotional distress, defamation, and misrepresentation.

At issue in this appeal are counts alleging the negligent treatment of Jane Doe by McKay, which allegedly deprived the plaintiff of his daughter's society and companionship (counts I and XI), as well as counts alleging intentional interference by McKay with the parent-child relationship (counts IV and XIV), and loss of his daughter's society and companionship (counts V and XV). The defendants moved to dismiss those counts on the ground that Illinois does not recognize those theories of liability in the circumstances alleged here. The trial judge granted the motions to dismiss and made the requisite finding under Supreme Court Rule 304(a) to permit an immediate appeal from that ruling. The plaintiff did not appeal the dismissal of a number of other counts, and the trial judge denied the defendants' motions to dismiss other parts of the amended complaint.

The appellate court reversed and remanded. 286 Ill. App. 3d 1020. The appellate court concluded that the plaintiff stated causes of action against McKay and her practice under the theories asserted in the counts challenged here, and the appellate court therefore remanded the cause to the circuit court for further proceedings. We allowed the defendants' petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court and affirm the judgment of the circuit court. We granted leave to the False Memory Syndrome Foundation to submit a brief as 
amicus curiae
 in support of the plaintiff. 155 Ill. 2d R. 345. Also, we allowed the following organizations to file a joint brief as 
amici curiae
 in support of the defendants: the Alliance for the Rights of Children; the American Counseling Association; the American Professional Society on the Abuse of Children; the Illinois Coalition Against Sexual Assault; Justice for Children; The Linkup; the Marilyn Van Derbur Institute, Inc.; Mothers Against Sexual Abuse; the National Alliance of Sexual Assault Coalitions; the National Coalition Against Sexual Assault; One Voice, the National Alliance for Abuse Awareness and the American Coalition for Abuse Awareness; Survivor Connections, Inc.; Survivors and Victims Empowered; Voices in Action, Inc.; and the Women's Law Project.

I

We consider first counts I and XI of the amended complaint. Count I alleges negligence against Dr. McKay individually; count XI is based on the same allegations, but is directed against her practice, Bobbie McKay, Ph.D., Ltd., under an agency theory. Both counts allege that McKay committed negligence toward Jane Doe. Separate counts alleging negligence by McKay toward the plaintiff himself were not dismissed by the trial judge, and they remain pending in the circuit court of Du Page County. The defendants argue that the negligence counts at issue here did not allege a legally recognized duty toward the plaintiff.

To state a cause of action for negligence, a complaint must allege facts that are sufficient to show the existence of a duty, a breach of the duty, and an injury to the plaintiff proximately caused by the breach. 
Widlowski v. Durkee Foods, Division of SCM Corp.
, 138 Ill. 2d 369, 373 (1990); 
Curtis v. County of Cook
, 98 Ill. 2d 158, 162 (1983). Whether a duty exists is a question of law to be determined by the court. 
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 116 (1995); 
Gouge v. Central Illinois Public Service Co.
, 144 Ill. 2d 535, 542 (1991); 
Cunis v. Brennan
, 56 Ill. 2d 372, 374 (1974). In deciding whether a duty exists in a particular case, a court will consider the foreseeability of the plaintiff's injury, the likelihood of the occurrence, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. 
Ward v. K mart Corp.
, 136 Ill. 2d 132, 140-41 (1990); 
Lance v. Senior
, 36 Ill. 2d 516, 518 (1967).

In 
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507 (1987), this court ruled that a third party injured by a patient could not bring a malpractice action against the patient's doctors, who allegedly failed to warn the patient that prescription drugs he was taking could impair his abilities. The plaintiff in that case was injured when the car in which he was riding struck a tree; the car was being driven by a recently discharged psychiatric patient who had received psychotropic drugs at a hospital and who had later consumed alcohol. The plaintiff sued the hospital, the manufacturers of the drugs, and two doctors. This court rejected the plaintiff's contention that the doctors' failure to advise the patient of the possible side effects of the drugs gave rise to a duty of care toward nonpatient third-parties such as the plaintiff. 
Kirk
, 117 Ill. 2d at 529-32. The court believed that allowing the action against the doctors to go forward would improperly enlarge their duty of care, for “[s]uch a broad duty extended to the general public would expand the physician's duty of care to an indeterminate class of potential plaintiffs.” 
Kirk
, 117 Ill. 2d at 532. As this court recognized in 
Kirk
, the duty of due care owed by a healthcare professional runs only to the patient, and not to third parties. A similar rule applies in other contexts, such as legal malpractice. 
McLane v. Russell
, 131 Ill. 2d 509 (1989); 
Pelham v. Griesheimer
, 92 Ill. 2d 13 (1982).

The plaintiff does not allege in counts I and XI, at issue here, that he was a patient of Dr. McKay. Elsewhere in the amended complaint the plaintiff separately alleges that he was a patient of Dr. McKay and seeks recovery on a malpractice theory, but those portions of the amended complaint are not involved in this appeal. Our only concern here is with the allegations in counts I and XI, which do not assert a therapist-patient relationship between Dr. McKay and the plaintiff. For the reasons expressed in 
Kirk
, it would appear that these counts must therefore fail. See 
Eckhardt v. Kirts
, 179 Ill. App. 3d 863, 874-75 (1989) (Reinhard, J., specially concurring) (decision in 
Kirk
 precludes recovery in wrongful death action brought against psychiatrist by estate of husband murdered by wife undergoing psychiatric treatment).

The appellate court below recognized that, as a general rule, a nonpatient may not bring a malpractice action against a healthcare professional. The court believed, however, that the present case fits within the concept of “transferred negligence,” as illustrated by this court's decision in 
Renslow v. Mennonite Hospital
, 67 Ill. 2d 348 (1977). The “transferred negligence” found in 
Renslow
 is a limited exception to the customary rule barring malpractice liability to nonpatient third parties. The appellate court believed that the present case comes within the 
Renslow
 exception because of the plaintiff's parent-child relationship with his daughter and because the therapist involved the plaintiff in the treatment here, rendering him a “quasi-patient” of Dr. McKay.

In 
Renslow
 the plaintiff's mother had received incompatible blood during a transfusion, which had caused the mother's blood to become sensitized. The mother did not learn of the problem until a number of years later, when she was pregnant with the plaintiff, and the plaintiff was injured as a result of her mother's condition. The 
Renslow
 court concluded that the defendants owed the plaintiff a duty of due care, even though she had not been conceived at the time of the alleged negligence, and therefore permitted the plaintiff to bring a malpractice action against the defendants–a hospital and its laboratory director.

In recognizing the child's cause of action for malpractice, the 
Renslow
 court drew a narrow exception to the general rule of nonliability to third-party nonpatients. Focusing on the close physical relationship between the plaintiff, injured while a fetus, and her mother, the plurality opinion explained:

“The cases allowing relief to an infant for injuries incurred in its previable state make it clear that a defendant may be held liable to a person whose existence was not apparent at the time of his act. We therefore find it illogical to bar relief for an act done prior to conception where the defendant would be liable for this same conduct had the child, unbeknownst to him, been conceived prior to his act. We believe that there is a right to be born free from prenatal injuries foreseeably caused by a breach of duty to the child's mother.” 
Renslow
, 67 Ill. 2d at 357.

Concurring in the court's decision, Justice Dooley thought that the harm to the later-conceived plaintiff was foreseeable. 
Renslow
, 67 Ill. 2d at 367-68 (Dooley, J., concurring).

We do not believe that similarly compelling circumstances are present in this case, and thus we decline to apply 
Renslow
's concept of transferred negligence here. The relationship between a mother and a fetus is perhaps singular and unique, and it is demonstrably different from the relationship that exists between a parent and an adult child. Notably, the injury complained of in 
Renslow
 was physical, traceable to the negligent treatment of the mother. In the present case, in contrast, the injury is nonphysical and results from decisions made by the daughter. We also note that the interests of the mother and the fetus in 
Renslow
 were not adverse to each other, while in the present case the interests of the plaintiff and Jane Doe are different.

Nor is the present appeal like 
O'Hara v. Holy Cross Hospital
, 137 Ill. 2d 332 (1990). In 
O'Hara
 the plaintiff accompanied her son to a hospital emergency room for treatment of a facial laceration. The plaintiff injured herself when she fainted during her son's treatment. The parties disputed whether the plaintiff was merely a bystander during her son's treatment or whether she was invited to assist in the treatment. This court concluded that the defendants did not have a duty to protect the plaintiff, a nonpatient, from physical injury if she was only a bystander during the treatment. If the plaintiff was invited to participate in her son's treatment, however, then the court believed that the defendants would owe her a duty to protect her from fainting. 
O'Hara
, 137 Ill. 2d at 340-42.

The basis for liability in 
O'Hara
 was not the transfer of negligence from the 11-year-old patient to the parent or the existence of a special relationship between the child and the parent, but the breach of a duty of care owed separately to the plaintiff. 
O'Hara
, 137 Ill. 2d at 339. The negligence counts at issue in this appeal, in contrast, allege malpractice not toward the plaintiff but toward his daughter. The plaintiff's separate counts seeking recovery for negligence committed against him remain pending in the circuit court of Du Page County and are not at issue in this appeal.

A number of considerations relevant to the duty analysis strongly militate against imposition of a duty here, even when the asserted liability is characterized in terms of transferred negligence or a special relationship. Under the rule expressed in 
Kirk
, the defendant therapist owed a duty of care to her patient only, and not to nonpatient third parties. Approval of the plaintiff's cause of action, however, would mean that therapists generally, as well as other types of counselors, could be subject to suit by any nonpatient third party who is adversely affected by personal decisions perceived to be made by a patient in response to counseling. This result would, we believe, place therapists in a difficult position, requiring them to answer to competing demands and to divide their loyalty between sharply different interests. Concern about how a course of treatment might affect third parties could easily influence the way in which therapists treat their patients. Under a rule imposing a duty of care to third parties, therapists would feel compelled to consider the possible effects of treatment choices on third parties and would have an incentive to compromise their treatment because of the threatened liability. This would be fundamentally inconsistent with the therapist's obligation to the patient. As one court has noted, “[D]octors should be free to recommend a course of treatment and act on the patient's response to the recommendation free from the possibility that someone other than the patient might complain in the future.” 
Lindgren v. Moore
, 907 F. Supp. 1183, 1189 (N.D. Ill. 1995). Hoping to avoid liability to third parties, however, a therapist might instead find it necessary to deviate from the treatment the therapist would normally provide, to the patient's ultimate detriment. This would exact an intolerably high price from the patient-therapist relationship and would be destructive of that relationship.

Moreover, recognition of the plaintiff's action could also be inconsistent with the duty of confidentiality that every therapist owes to his or her patients. The defendants point out that the therapist cannot properly defend the present action without revealing confidences revealed to her by Jane Doe. These communications are privileged and are subject to disclosure only in a limited range of circumstances, as in cases in which the patient has sued the therapist. 735 ILCS 5/8–802 (West 1994) (privileged communications involving patients and healthcare practitioners, including psychologists); 740 ILCS 110/3(a) (West 1994) (under Mental Health and Developmental Disabilities Confidentiality Act, “[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act”).

The Supreme Court recently underscored the importance of the psychotherapist privilege in a case that extended the privilege to social workers:

“Effective psychotherapy *** depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.” 
Jaffee v. Redmond
, 518 U.S. ___, ___, 135 L. Ed. 2d 337, 345, 116 S. Ct. 1923, 1928 (1996).

The 
Jaffee
 Court concluded, “The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.” 
Jaffee
, 518 U.S. at ___, 135 L. Ed. 2d at 345-46, 116 S. Ct. at 1929.

Allowing a nonpatient's action against another person's therapist to go forward would seriously intrude on the relationship between therapist and patient, jeopardizing the confidentiality necessary for the relationship to flourish. As this case illustrates, the patient would be faced with a difficult choice between preserving the confidentiality of patient-therapist communications and assisting the therapist in responding to what must, to the patient's eyes, be a meritless action. The patient could either waive the privilege and permit the therapist to defend the action, while suffering the public disclosure of communications originally intended to remain private, or assert the privilege and maintain the confidentiality of the therapy, but at the price of denying the therapist, presumably a valued friend, the use of potentially helpful evidence.

Thus, unless waived by the patient, the therapist's duty of confidentiality would restrict the therapist in the way in which she could respond here to the plaintiff's allegations. For example, the therapist could neither confirm nor deny that the patient told her certain things during the course of the patient's treatment. We note that the record in the present case contains an affidavit from defendant Bobbie McKay, in which she states that Jane Doe has declined to waive the statutory privilege. Thus, Dr. McKay could not easily answer the present action, for her patient has effectively forbidden her to respond to some of the central allegations of the plaintiff's complaint.

The considerations we have just discussed–the problem of divided loyalties, and the strong public interest in maintaining the confidentiality of therapist-patient communications–argue strongly against imposing on therapists a duty of care toward nonpatients. Accordingly, we believe that the rule in 
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507 (1987), barring malpractice actions by third parties must be applicable here and requires that no duty be extended to the plaintiff for psychic injuries allegedly arising from the therapist's treatment of Jane Doe. To be sure, the plaintiff may allege that he himself was a patient of Dr. McKay, and counts to that effect remain pending in the circuit court of Du Page County. They are not at issue in the present appeal, however.

II

We next consider whether the plaintiff may recover damages for lost society and companionship under theories of intentional interference with a family relationship, as alleged in counts IV, V, XIV, and XV of the amended complaint. The defendants argue that this court's decision in 
Dralle v. Ruder
, 124 Ill. 2d 61 (1988), should be construed as barring recovery for lost society and companionship of a nonfatally injured child. The plaintiff contends that 
Dralle
 does not bar recovery of these damages. Although we have considered the negligence counts separately, we note that the same defects discussed below would affect the negligence counts as well, for those counts also seek damages for lost society and companionship.

In 
Dralle
 this court declined to recognize a cause of action by parents to recover for loss of society and companionship in a products liability action against the manufacturer of a drug that allegedly caused nonfatal birth defects in the plaintiffs' child. The court mentioned “the appropriate scope of tort liability” (
Dralle
, 124 Ill. 2d at 69) and the interests that other relatives besides parents could assert in bringing similar claims to recover for lost society caused by nonfatal injuries to a relative. The court also cited the availability of the injured child's own cause of action, which could be duplicated by the parents' own claim. 
Dralle
, 124 Ill. 2d at 70. Finally, the court referred to the problems that inevitably arise in determining damages for lost society and companionship resulting from nonfatal injuries. 
Dralle
, 124 Ill. 2d at 70-71. Although 
Dralle
 rejected the parents' claim, the court did not address recovery in actions based on what has been characterized as a “direct” interference with family relationships, as opposed to the “indirect” interference alleged in 
Dralle
. 
Dralle
, 124 Ill. 2d at 72-73, citing 
Kunz v. Deitch
, 660 F. Supp. 679 (N.D. Ill. 1987) (allowing widowed father to bring action against in-laws for attempting to have child placed for adoption without father's knowledge or consent); 
Whitehorse v. Critchfield
, 144 Ill. App. 3d 192 (1986) (denying parent's cause of action for loss of society resulting from acts intended to induce child to leave parental home); 
Dymek v. Nyquist
, 128 Ill. App. 3d 859 (1984) (allowing divorced father to bring action alleging former spouse and psychiatrist conspired to brainwash son in effort to destroy father's relationship with child).

The plaintiff maintains that he is alleging an action for direct interference, and it was on that ground that the appellate court below permitted the plaintiff to proceed on these portions of the amended complaint. 286 Ill. App. 3d at 1026-27. We do not agree that the asserted distinction between “direct” and “indirect” forms of interference support a different result in this case, for we believe that the same considerations that led the court to deny recovery in 
Dralle
 must also preclude recovery for lost society and companionship here. In our view, the considerations cited in 
Dralle
 as grounds for barring recovery of psychic damages are applicable whether the interference with the relationship is characterized as direct or indirect. See 
Alber v. Illinois Department of Mental Health & Developmental Disabilities
, 786 F. Supp. 1340, 1364-65 (N.D. Ill. 1992); but see 
Sullivan v. Cheshier
, 846 F. Supp. 654, 666-61 (N.D. Ill. 1994). Accordingly, we conclude that the concerns raised in 
Dralle
 must also preclude recovery here.

First, allowing recovery by the plaintiff would greatly expand the potential liability of therapists and other counselors. As we noted above, in declining to extend the therapist's duty of care to nonpatients, permitting the plaintiff's action here would considerably enlarge therapists' potential liability to persons affected by the decisions made by patients in response to psychological counseling. Ultimately, any person who advises another could be subject to liability for actions taken on that advice. Again, this result would impose conflicting demands on therapists, who would then have both a duty to serve the needs of their patients and a duty to avoid harming the interests of unknown third parties. Also, defending actions against nonpatients would, as we have discussed, undermine the vital precept of confidentiality on which the therapist-patient relationship depends.

Moreover, we note that a tort remedy is available to a patient who believes that he or she has been the victim of professional malpractice. Although the plaintiff's daughter is not a party to the present action, she may, if she chooses, bring her own suit for malpractice. In that event, she would be placing her own treatment at issue, waiving the statutory privileges protecting patient-therapist communications, and the confidentiality concerns mentioned earlier would no longer restrict the therapist in defending the action. 735 ILCS 5/8–802(2) (West 1996) (privilege waived “in actions, civil or criminal, against the healthcare practitioner for malpractice (in which instance the patient shall be deemed to have waived all privileges relating to physical or mental condition)”); 740 ILCS 110/10(a)(3) (West 1994) (“In the event of a claim made or an action filed by a recipient, or, following the recipient's death, by any party claiming as a beneficiary of the recipient for injury caused in the course of providing services to that recipient, the therapist may testify as to pertinent records or communications in any administrative, judicial or discovery proceeding for the purpose of preparing and presenting a defense against the claim or action”).

We also recognize the difficulty in determining an appropriate recovery in cases like this. A trier of fact considering damages for lost society and companionship in these circumstances would in essence be asked to consider the degree and duration of the estrangement between the plaintiff and his adult daughter. Assigning a value to the impaired relationship would be a difficult task, of course, and it is one that would be made even more complex by the possibility that the estrangement could end at any time in reconciliation.

* * *

In sum, we do not believe that the plaintiff has succeeded in stating a cause of action under the theories at issue in this appeal. Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court of Du Page County is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE HARRISON, dissenting:

My colleagues expound at length about the need to protect medical providers from liability to some indeterminate class of nonpatient third parties. They fail to see that that is not what this case is about at all. Plaintiff here was not a chance bystander or random member of the general public. He was a relative of the therapist's patient, he was the alleged cause of the patient's psychological difficulties, and, according to the complaint, the therapist specifically arranged to have him participate in the patient's therapy sessions as part of the patient's treatment program.

Where a third party has the kind of relationship with the patient that John Doe had here and the therapist chooses to make that third party an integral part of a patient's treatment, as the therapist in this case did, the majority's concerns about compromising patient confidentiality and divided loyalty make no sense. It was the therapist who orchestrated what happened here, she did so with the patient's consent, and once John Doe began participating in the sessions at the therapist's behest, protecting the patient's condition against disclosure to third parties ceased to be a consideration. Divulging the patient's complaints to John Doe was, in fact, the very foundation of the therapist's treatment plan. As the majority notes, the therapist hoped that the shock effect of the patient's disclosures would force Doe to confess.

As it turned out, no confession was forthcoming. The plan failed. The damage that John Doe allegedly sustained as a result was foreseeable by any meaningful standard. The likelihood of injury was great, the burden of guarding against that injury was slight, and there would be no significant adverse consequences from placing that burden on the therapist.

The majority claims that approving plaintiff's cause of action 

“would mean that therapists generally, as well as other types of counselors, could be subject to suit by any nonpatient third party who is adversely affected by personal decisions perceived to be made by a patient in response to counseling.” Slip op. at 8.

This is patently untrue. A cardinal principle of our common law system is that a holding can have no broader application than the facts of the case that gave rise to it. 
Cates v. Cates
, 225 Ill. App. 3d 509, 513 (1992), 
aff'd
, 156 Ill. 2d 76 (1993), citing 
Nix v. Smith
, 32 Ill. 2d 465 (1965). The case before us today does not involve “therapists generally,” but a licensed clinical psychologist. As previously indicated, plaintiff was not simply “any third party,” but a family member who was used as a tool in plaintiff's treatment program. Moreover, the harm alleged here did not result from “personal decisions perceived to be made by a patient,” whatever that means. It was the product of a failed course of treatment formulated by a mental health professional. 

 In O'Hara v. Holy Cross Hospital
, 137 Ill. 2d 332, 342 (1990), this court held that a hospital has a duty to protect a parent from harm where the parent is invited to participate in her child's care and treatment. I see no reason why we should not recognize a similar duty on the part of the psychologist who has been sued in this case. I would further hold that the plaintiff should be allowed to seek damages from that psychologist for lost society and companionship based on intentional and direct interference with a family relationship. The judgment of the appellate court should therefore be affirmed.