NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220060-U

NO. 4-22-0060

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 27, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GARY E. MATTHEWS and MONTE J. BRANNAN, Plaintiffs-Appellants, v. THE CITY OF PEORIA and MAYOR JAMES ARDIS, Individually and as Mayor of the City of Peoria, Defendants-Appellees. | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Peoria County No. 19L49 Honorable David A. Brown, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Because the circuit court's dismissal of some counts of the amended complaint with prejudice and its dismissal of the remaining counts without prejudice did not dispose of the rights of the parties upon a definite and separate part of the controversy, the circuit court's finding of no just reason to delay enforcement or appeal (see Ill. S. Ct. R. 304(a) (Mar. 8, 2016)) was ineffectual, and the appellate court lacks jurisdiction.

¶ 2    In the circuit court of Peoria County, plaintiffs, Gary E. Matthews and Monte J. Brannon, sued defendants, the city of Peoria, Illinois (city), and its mayor, James Ardis, for breach of contract and for tortious interference with contracts and business expectancies. According to the amended complaint, Matthews sued "individually" and also "as a representative of" EM Properties, Ltd., an Illinois S corporation wholly owned by him. Pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2020)), plaintiffs moved to dismiss the amended complaint. The court dismissed the contract counts on

the ground of a lack of standing, but because it was unclear to the court that this defect was incurable, the court gave plaintiffs permission to replead those counts. The tort counts, however, the court found, were barred by a statute of limitations (745 ILCS 10/8-101(b) (West 2020)), so the court dismissed those counts with prejudice. On plaintiffs' motion, the court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016)) that there was no just reason to delay enforcement or appeal. Having allowed the deadline for repleading the contract counts to expire and without having obtained a dismissal of the case, plaintiffs appeal the dismissal of the tort counts, relying on the Rule 304(a) finding. We dismiss their appeal for lack of jurisdiction.

¶ 3                                I. BACKGROUND

¶ 4            From 2007 to 2010, according to the amended complaint, plaintiffs entered into negotiations with the city to redevelop Pere Marquette Hotel and adjacent properties on Main Street. In June 2019, EM Properties, Ltd., and the city entered into a redevelopment agreement, under which the city was to provide a grant to help fund the construction.

¶ 5            Count I of the amended complaint alleges that the city breached the redevelopment agreement by "unilaterally terminating" it, thereby coercing plaintiffs to accede to an amended redevelopment agreement, the terms of which were more onerous to plaintiffs. (It appears, from the amended redevelopment agreement, which is attached to the amended complaint as exhibit D, that this agreement was between the city and three business entities, *i.e.*, EM Properties, Ltd.; Pere Marquette Hotel, LLC; and Pere Marquette TIF, LLC—not, strictly speaking, between the city and plaintiffs.) The city repeated this coercive strategy over and over again, according to count I, using threats of cancellation to wring further concessions from plaintiffs and creditors. Count I alleges that, by these threats to back out of the redevelopment project, the city breached its contractual

promises to cooperate in good faith with plaintiffs and not to unreasonably withhold consent to project-related proposals.

¶ 6        Count I accuses the city of further violating its contractual promises of good-faith cooperation by sabotaging plaintiffs' efforts to obtain refinancing for the project. Deutsche Bank made a refinancing offer but withdrew the offer when the city, unlike other creditors, refused to "waive one penny of the maximum possible recovery that it could obtain." Subsequently, according to count I, YAM Capital, LLC (YAM), made a refinancing offer but likewise withdrew it after members of the city council publicly disparaged plaintiffs and expressed dissatisfaction with YAM's offer (though voted to approve it).

¶ 7        By its troublemaking, obstructionism, and inflexibility, count I alleges, the city forced the hotel into foreclosure and bankruptcy (and forced plaintiffs, as guarantors, into bankruptcy, too). Then, according to count I, Ardis and members of the city council ruined the bankruptcy auction of the hotel by publicly accusing plaintiffs of fraud and malfeasance. The only bidder at the auction was the senior lender, INDURE. Other potential bidders shied away, to the detriment of all the stakeholders, including the city.

¶ 8        Count II alleges that, by the coercive threats of cancellation and the denigration of plaintiffs and the redevelopment project—in short, by the conduct described in count I—the city breached its implied contractual duty of good faith and fair dealing (not merely its express contractual duty, as count I alleged).

¶ 9        Count III alleges that, through their threats to terminate the redevelopment agreement, their refusal to negotiate with Deutsche Bank, and their bad-mouthing of plaintiffs and the YAM offer, Ardis and the city tortiously interfered with plaintiffs' contractual relations with other creditors.

¶ 10    Count IV alleges that the same conduct by Ardis and the city tortiously interfered with business expectancies on which plaintiffs' fortunes depended, namely, refinancing of the project by Deutsche Bank and YAM.

¶ 11    On November 29, 2021, on defendants' motion, the circuit court dismissed the contract counts, counts I and II, pursuant to section 2-615 (735 ILCS 5/2-615 (West 2020)). The ground for dismissal was plaintiffs' lack of standing. The dismissal order explained:

> "Plaintiffs, or either of them, are not a contracting party with any of the Defendants. No viable theory of third-party beneficiary has been presented to satisfy the standing requirement for a breach of contract. *** Plaintiffs, as individuals, cannot pursue causes of action in this court in a representative capacity. The court rejects any notion that Plaintiff Matthews and EM Properties, Ltd.[,] are somehow one and the same."

Although plaintiffs had proposed "no viable theory," the court could not "rule out the possibility of some theory upon which these Plaintiffs might be able to pursue a claim." Therefore, the court specified that the dismissal of counts I and II was without prejudice, giving plaintiffs 28 days to replead those counts—a deadline the court subsequently extended, on plaintiffs' motion, to January 10, 2022.

¶ 12    However, the circuit court dismissed the remaining two counts of the amended complaint—counts III and IV, the tort counts—with prejudice, finding them to be barred by the one-year period of limitation in section 8-101(b) of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101(b) (West 2020)). The court reasoned as follows:

"The cause of action alleged in Counts III and IV relate [*sic*] to the failed attempts to refinance. \*\*\* The loss or damage alleged was the loss of the benefits of the respective refinancings. Those losses or damages of the failed refinancings were readily known to and actually experienced by Plaintiffs (or those entities which were actually negotiating the refinancings) at the time the lender or financer backed out—not sometime later when the property was sold in foreclosure. As such, the court finds the claims for tortious interference should have been brought within one (1) year of the date the lenders gave notice that they were no longer interested in doing the refinancing. Deutsche Bank cancelled its refinancing proposal on 1/3/2017. YAM cancelled its on 2/10/2018. Plaintiffs filed the complaint in this case on 3/7/2019. As such, the complaint is not timely."

¶ 13 On plaintiffs' motion, the circuit court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). "Pursuant to Illinois Supreme Court Rule 304(a)," the court found, "there is no just reason to delay the appeal or enforcement of the Court's Order entered on November 26, 2021, granting Defendants' Motion to Dismiss Amended Complaint filed on September 18, 2019, dismissing with prejudice of [*sic*] Counts III and IV of the Amended Complaint."

¶ 14 On January 21, 2022, without repleading counts I and II and without the entry of an order striking the case, plaintiffs filed their notice of appeal. The notice of appeal challenges only the dismissal of counts III and IV.

¶ 15                                                    II. ANALYSIS

¶ 16 In their brief, under the heading of "Appellate Jurisdiction," plaintiffs represent, "This Court has jurisdiction by virtue of the trial court granting a Rule 304(a) [(Ill. S. Ct. R. 304(a)

(eff. Mar. 8, 2016)] finding on December 23, 2021." But the jurisdictional question is not so simple. The first sentence of Rule 304(a) provides, "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a *final judgment* as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." (Emphasis added.) *Id.* Although a Rule 304(a) finding makes a final order appealable, the finding does not make a nonfinal order appealable. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 24. "If the order is in fact nonfinal, inclusion of the special finding in the trial court's order cannot confer appellate jurisdiction." *Id.*

¶ 17 An order is final if "it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." *Id.* ¶ 25. The dismissal order of November 26, 2021, which was the subject of the Rule 304(a) finding, did not dispose of the rights of the parties upon the *entire* controversy. See *id.* According to the order, the dismissal of counts I and II of the amended complaint was without prejudice. The circuit court gave plaintiffs permission to replead those counts by January 10, 2022.

¶ 18 Defendants observe that plaintiffs never repleaded counts I and II and that the deadline for repleading those counts has expired. Even so, the expiration of the repleading deadline did not transform the explicitly nonprejudicial dismissal of counts I and II into a final disposition. See *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 587 (2003); *Jackson v. Victory Memorial Hospital*, 387 Ill. App. 3d 342, 351-52 (2008). The court never struck the case. The court never changed the dismissal of counts I and II from a dismissal without prejudice into a dismissal with prejudice. See *Smith*, 207 Ill. 2d at 587. The court was free to give plaintiffs even more time, beyond January 10, 2022, to replead counts I and II. See *id.* at 588; *Jackson*, 387 Ill.

App. 3d at 352. Therefore, we are unconvinced when defendants assert—without citation of authority—that, upon the expiration of the repleading deadline, "the case before the Trial Court was over" and that, consequently, this appeal is from "a final judgment pursuant to Illinois Supreme Court Rule 303 [(Ill. S. Ct. R. 303 (eff. July 1, 2017))]." Rather, case law is clear that the mere passing of a repleading deadline finalizes nothing. See *Smith*, 207 Ill. 2d at 587; *Jackson*, 387 Ill. App. 3d at 351-52.

¶ 19        So, there was no order "dispos[ing] of the rights of the parties *** upon the entire controversy"—that part of the definition of a final order is unmet. *Blumenthal*, 2016 IL 118781, ¶ 25. The question, then, is whether the dismissal, with prejudice, of counts III and IV "dispose[d] of the rights of the parties *** upon some definite and separate part" of the controversy. *Id.*

¶ 20        Counts III and IV raised tort theories, whereas counts I and II alleged breach of contract. Granted, the appellate court has explained, "An order disposes of a separate branch of a controversy when the bases for recovery of the counts which are dismissed are different from those which are left standing. [Citations.] This *may* occur when the grounds for recovery under the various counts arise from different statutes or common law doctrines or when different elements are required to recover under different theories." (Emphasis added.) *Rice v. Burnley*, 230 Ill. App. 3d 987, 991 (1992). Presenting the same claim, however, in the guise of a different legal theory does not make "the bases for recovery" different. *Id.* "[W]here a party states one claim in several counts, the dismissal of fewer than all such counts is not a final judgment as to [any] of the party's *claims* as required by Supreme Court Rule 304(a)." (Emphasis in original.) *Russell v. Good Shepherd Hospital*, 222 Ill. App. 3d 140, 145 (1991).

¶ 21        In *Davis v. Loftus*, 334 Ill. App. 3d 761, 762 (2002), for example—a case the supreme court cited approvingly in *Blumenthal*, 2016 IL 118781, ¶ 27—the plaintiffs sued the

defendants for legal malpractice. In some counts of their complaint, the plaintiffs characterized their attorneys' defective performance as a breach of contract while in other counts they characterized it as tortious malpractice. *Davis*, 334 Ill. App. 3d at 762. The circuit court "struck with prejudice counts II and V, the contract counts, as needless duplication of the malpractice counts." *Id.* at 765. Supplied with a Rule 304(a) finding by the circuit court, the plaintiffs appealed the dismissal of counts II and V. *Id.* For the following reasons, the appellate court concluded that, despite the Rule 304(a) finding, the appellate court lacked jurisdiction:

> "The facts here supporting the dismissed contract claim are identical to the facts supporting the legal malpractice claim, which awaits trial. The relief sought in the dismissed counts is identical to the relief sought in the surviving counts. To address an appeal from the dismissed contract count[s] on the merits, this court will need to learn all the facts that may later come before the court on appeal from a final judgment on the malpractice count[s]. And full compensation for the alleged malpractice would render any decision on the contract counts moot." *Id.* at 767.

¶ 22　　　In *Blumenthal*, the supreme court provided a similar rationale for concluding that, despite a Rule 304(a) finding by the circuit court, the appellate court lacked jurisdiction. If the counts of a complaint, the supreme court explained, "were, in effect, different iterations of the very same claim"—"merely advanc[ing] different analytical approaches" to "the same operative facts" (*Blumenthal*, 2016 IL 118781, ¶ 26)—"the dismissal of fewer than all counts [was] not a final judgment" within the meaning of Rule 304(a) (*id.* ¶ 27).

¶ 23　　　All four counts of the amended complaint in the present case are based on the same operative facts. The amended complaint begins with a factual background of 113 numbered paragraphs. Then counts I, II, III, and IV each incorporate by reference those 113 paragraphs as

the factual basis for theories that the city breached express provisions of its contracts (count I), that the city and Ardis breached the implied contractual duty of good faith and fair dealing (count II), that the city and Ardis tortiously interfered with contracts (count III), and that the city and Ardis tortiously interfered with business expectancies (count IV). Thus, on the face of the amended complaint, "[t]he facts here supporting the dismissed" tortious-interference counts "are identical to the facts supporting" the breach-of-contract counts. *Loftus*, 334 Ill. App. 3d at 767. All four theories of liability arise from "the same operative facts," suggesting that the four counts are merely "different iterations of the very same claim." *Blumenthal*, 2016 IL 118781, ¶ 26.

¶ 24        The tortious interference in counts III and IV is merely an alternative way of describing the breaches of contract in counts I and II. An element of tortious interference with a contract or business expectancy is that the interference was "improper." Restatement (Second) of Torts § 766, 766A, 766B (1979). Interference is "improper" if it "is not "sanctioned by the 'rules of the game.' " Restatement (Second) of Torts § 767 cmt. j (1979). According to the amended complaint, the rules of the game were in the contracts to which the city was a party—contractual rules of cooperation, good faith, and fair dealing that the city and Ardis allegedly breached, thereby tortiously alienating refinancers with which plaintiffs were poised to make deals. Thus, the amended complaint is merely an exercise in recasting a contractual claim alternatively as a tort claim. Counts I, II, III, and IV are basically the identical claim in different legal packaging.

¶ 25        As if to confirm the essential sameness of the claim from one count to another, all four counts seek the same money damages: "$9.3 million for the value of the lost development fees in the Hotel"; "$1.4 million each for the estimated value of [plaintiffs'] shares in GEM Hospitality, LLC"; and "costs and[,] if applicable under contractual terms, their attorney fees." "The relief sought in" the tort counts, which were dismissed with prejudice, "is identical to the

relief sought in" the contract counts, which were dismissed without prejudice. *Davis*, 334 Ill. App. 3d at 767.

¶ 26 Therefore, if plaintiffs successfully repleaded counts I and II and won a verdict on those counts, "full compensation for" the breaches of contract "would render any decision on" the tort counts "moot." *Id.* Not only would this appeal turn out to have been a waste of time in that event, but the inefficiency would be compounded if defendants then appealed from an adverse judgment on repleaded count I or count II. We then would have to learn the long and involved factual history of this case all over again. See *id.*

¶ 27 This factual history is the unifying thread upon which the four counts are strung like different-colored beads. We conclude that the dismissal, with prejudice, of counts III and IV of the amended complaint did not "dispose[ ] of the rights of the parties *** upon some definite and separate part" of the controversy. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 25. Notwithstanding the Rule 304(a) finding, we lack jurisdiction over this "piecemeal appeal[ ]." (Internal quotation marks omitted.) *Id.* ¶ 23.

¶ 28 Because of our lack of jurisdiction, we do not reach the merits of plaintiffs' contention that the circuit court erred by finding counts III and IV to be time-barred. To buttress that contention, plaintiffs have moved to supplement the record in the present case with the record from a different case, *GEM Hospitality, LLC v. City of Peoria*, Peoria County case No. 19-L-235. In that other case, the defendants likewise moved to dismiss the complaint. According to plaintiffs' motion to supplement the record, the affidavit of a bankruptcy trustee, Andrew Erikson, which plaintiffs filed in opposition to the motion to dismiss in case No. 19-L-235, would "clarif[y] the timeline of events in bankruptcy court which led to the sale of the Hotel Project." The timeline is

irrelevant, however, given our lack of jurisdiction over this appeal and our consequent lack of authority to reach the merits. Therefore, we deny plaintiffs' motion to supplement the record.

¶ 29                           III. CONCLUSION

¶ 30          Absent a final judgment or order, we lack jurisdiction. Therefore, we dismiss this appeal.

¶ 31          Appeal dismissed.